ROY NOBLE LEE, Presiding Justice,
for the Court:
This case is a sequel to Andrews v. Waste Control, Inc., 409 So.2d 707 (Miss. 1982), which included the same facts, for the purposes of this decision, and the same parties, viz, the Board of Supervisors, Justice Court Judges and Sheriff, Officers of Warren County, Mississippi. The Board of Supervisors was dismissed as party defendants and the complaint proceeded to trial against the other defendants.
Waste Control, Inc., whose president, operator and majority owner is Herbert Dow-ney, is engaged in the business of hauling waste from U.S. Rubber Company to a landfill located on property of Herbert Downey. The waste is transported by 18-wheeler Waste Control trucks with an average weight of 55,000 lbs. They are each equipped with five axles and make three round trips per day, utilizing a two-mile length of Halls Ferry Road. The landfill on Downey’s property is the only one in the county which will accept waste from U.S. Rubber.
In Waste Control, Inc. #1, the Warren County Board of Supervisors enacted a resolution, which restricted maximum weight of vehicles travelling on Halls Ferry Road to 30,000 lbs. The chancellor found the resolution and ordinance arbitrary and unreasonable in that the Board of Supervisors failed to follow the statutory guidelines of Mississippi Code Annotated § 65-7-45 (1972) as to both load limits and tire widths. The Board of Supervisors did not consider tire widths in passing the resolution and failed to comply with the statute. This Court affirmed the chancellor’s action which enjoined the officers from enforcing that resolution.
Subsequent to Waste Control #1, the statutes were amended.
Miss. Code Ann. § 65-7-43, as amended, has not been changed where pertinent and provides as follows:
The board of supervisors of any county pursuant to the maximum load limits established in Chapter 5, Title 63, Mississippi Code of 1972, and the posting authority granted in section 63-5-27(5) may declare what is or may be an unusual or uncommon load or weight to be conveyed on or over the roads, bridges or approaches of any bridges in the county; shall have power to protect their roads and bridges from any unusual or uncommon use where the same is likely to injure or impair their usefulness as public highways; and may recover damages for injuries.
Miss.Code Ann. § 65-7-45, as amended, has been changed to delete the former language regarding regulation of the width of tires:
The board of supervisors of any county in this state may, at the discretion of such board, regulate the maximum load of any vehicle using the public roads and bridges of such county, or any section or length of any public road, or any particular bridge in such county by order spread on its minutes, which order shall, before being in full force and effect, be first published in a newspaper published in the county for three (3) consecutive weeks, whereupon such resolution shall be in force and effect.
Miss.Code Ann. § 65-7-45, as amended.
Appellants assign the following errors in the trial below:
I. THE LOWER COURT ERRED IN DISMISSING PLAINTIFF’S COMPLAINT AT THE CLOSE OF ITS CASE-IN-CHIEF.
II. THE LOWER COURT ERRED IN NOT FINDING THE RESOLUTION IN QUESTION ARBITRARY, UNREASONABLE AND DISCRIMINATORY.
The legislature properly exercises its police powers in the regulation of vehicular traffic, speed regulations and weight limits on the highways and roads. Brown v. McCoy, 362 So.2d 186, 188 (Miss.1978). The exercise of police power is valid if it has for its object the protection and promotion of the public health, safety, morality or welfare, if it is reasonably related to the attainment of that object, and if it is not oppressive, arbitrary or discriminatory, Hattiesburg Fire-Fighters Local 18¿ v. *288 City of Hattiesburg, 263 So.2d 767, 772 (Miss.1972). See State v. Michigan, Wisconsin Pipeline Co., 360 So.2d 684, 690 (Miss.1978).
The record contains the testimony of only two witnesses, who were introduced by the appellant, i.e., Herbert Downey, president of Waste Control, Inc., and Albert Bush, a research civil engineer at the U.S. Army Waterways Experiment Station. Mr. Bush has extensive qualifications in pavement evaluation and maintenance, and he examined Halls Ferry Road and other roads in Warren County, along with various records.
The testimony of Downey reflects that the two-mile stretch which Waste Control, Inc. uses on Halls Ferry Road is in better condition with fewer repairs than the joining section of Halls Ferry Road; that Waste Control is under contract to pick up the refuse at U.S. Rubber five to six days a week; and that if it could not be picked up, the plant would have to shut down; and that the condition of the road is better than other roads even with the heavier load weights. He stated that the round trip is approximately 17.8 miles longer, since passage of the resolution, and U.S. Rubber has paid Waste Control, Inc. $25.00 more per round trip.
The substance of Mr. Bush’s testimony was that a 30,000-lb. truck with two axles would cause approximately twice the wear and tear on the road as a 55,000-lb. truck with five axles, e.g., the size trucks and wéight loads of appellant’s vehicles; that there was no more evidence of repair and maintenance on Halls Ferry Road than on the other roads; and that the state statute and resolution, by not relating weight limits to the number of axles, do not serve a valid purpose.
The record reflects that weight on an 18-wheel truck can be distributed to make it more severe than the hypothetical 30,-000-lb. truck, according to the load being hauled. In the event the load was not evenly distributed, more damage would be caused by the 18-wheeler truck than the 30,000-lb. hypothetical truck. Also, curves, grades of the road, and other physical factors have an effect upon the weight of the vehicle and load.
In South Carolina State Hwy. Dept. v. Barnwell Bros., 303 U.S. 177, 192-195, 58 S.Ct. 510, 517-519, 82 L.Ed. 734, 743-745 (1938), the United States Supreme Court addressed a question similar to the one here, and, in part, said:
At the outset it should be noted that underlying much of the controversy is the relative merit of a gross weight limitation as against an axle or wheel weight limitation. While there is evidence that weight stresses on concrete roads are determined by wheel rather than gross load weights, other elements enter into choice of the type of weight limitation. There is testimony to show that the axle or wheel-weight limitation is the more easily enforced through resort to weighing devices adapted to ascertaining readily axle or wheel weight. But it appears that in practice the weight of truck loads is not evenly distributed over axles and wheels ... and that it is much easier for those who load trucks to make certain that they have complied with a gross load weight limitation than with an axle or wheel-weight limitation_ The choice of a weight limitation based on convenience of application and consequent lack of need for rigid supervisory enforcement is for the Legislature, and we cannot say that its preference for the one over the other is in any sense arbitrary or unreasonable. The choice is not to be condemned because the Legislature prefers a workable standard, less likely to be violated than another under which the violations will probably be increased but more easily detected. It is for the Legislature to say whether the one test or the other will in practical operation better protect the highways from the risk of excessive loads.
If gross load weight is adopted as the test, it is obvious that the permissible load must be somewhat lighter than if the axle or wheel-weight test were applied. ...
******
*289 ... The record is without convincing evidence of the actual distribution, in practice, of the gross load weight over the wheels and axles of the permissible types of simi-trailer [sic] motortrucks, but this does not enable us to say that the Legislature was without substantial ground for concluding that the relative advantages of a gross load weight over wheel weight limitation are substantially the same for the two types, or that it could not have concluded that they were so nearly alike for regulatory purposes as to justify the adoption of a single standard for both, as a matter of prac-' tical convenience....
... [Scientific precision is not the criterion for the exercise of the constitutional regulatory power of the states....
In Waste Control, Inc. #1, the Court said:

However, nothing contained herein should be construed to limit the board’s power to regulate weight limitations over roads within its jurisdiction provided the language of the statute is strictly complied with as to both width of tires and maximum load.

409 So.2d at 713. (Original Emphasis)
Since the amendment mentioned supra deleted the tire width factor from the statute, the resolution before the Court in the case sub judice fully complies with the statute, as amended. We are of the opinion that the lower court was eminently correct in requiring enforcement of the resolution and order, and the judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.