592 So.2d 941 (1991)
Darrell FAIRCLOTH
v.
James LYLES, Donna Lyles, Dr. Edward J. Valente, Dr. James Burnside, Dr. Lucy Burnside, E.C. Rochester, Jane Rochester, Marion L. O'Neals, Frank W. Lyles, Jimmy R. Lung, Norma Lung, William Moore, Terri Moore, Dr. John Murphy, Estelle Murphy, Milton Bayse, Colleen Bayse, Henry Marsalis, Willene Marsalis, William Elton Taylor & Hinds County Board of Supervisors.
No. 89-CA-0703.
Supreme Court of Mississippi.
October 16, 1991.
*942 William C. Smith, Jr., J. Gary Massey, Taylor Covington Smith Lambert & Bailey, Jackson, for appellant.
Robert L. Spell, Edmonson Biggs & Jelliffe, Jackson, Barry W. Gilmer, Gilmer Law Firm, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
This is an appeal from an order of the Circuit Court of the First Judicial District of Hinds County, vacating an order of the Board of Supervisors of Hinds County rezoning certain property owned by Darrell Faircloth. We reverse and render.

I.
Darrell Faircloth owns approximately 32 acres of land in the Northwest Quarter of Section 8, Township 5 North, Range 1 West, Hinds County, Mississippi. A sand mining operation has been conducted on the property for many years, including prior to the 1970 enactment of a county zoning ordinance. The 1970 ordinance was supplanted in 1974 by the zoning ordinance currently used.
The property sought to be rezoned by Faircloth was classified for commercial and residential use in the 1974 ordinance. At the time the ordinance was established as law, sand mining was not specifically excepted as a nonconforming use, although Article X of the ordinance recognized that nonconforming uses existed. Property zoned commercial and residential did not permit sand extraction. However, property zoned agricultural provided for uses as follows:
ARTICLE IV
"A" AGRICULTURAL DISTRICT
(A) Uses Permitted. Uses and structures permitted in this area include but are not limited to agricultural, horticultural, floricultural and other similar uses of a noncommercial nature which require few, if any, of the regular services or commodities required by uses in other districts in this ordinances. Uses permitted are summarized as follows:
* * * * * *
15. Extraction of minerals, including sand and gravel.
In 1986, Faircloth was advised that strict enforcement of the uses permitted under the classifications assigned his property *943 prohibited sand extraction. He sought rezoning to "A" Agricultural Use under the advice and belief that sand extraction was permissible under this classification. The Hinds County Planning Commission considered Faircloth's petition to rezone and recommended that it be approved with certain protective covenants and a 200 foot buffer zone as an improved condition. Faircloth does not complain of the imposed covenants and conditions.
The Hinds County Board of Supervisors conducted an administrative hearing on October 13, 1986. Faircloth and objectors to the zoning petition appeared and formally presented their positions. The Board approved the rezoning petition subject to the conditions recommended by the Planning Commission.
The objectors appealed the Board's decision to the Circuit Court of the First Judicial District of Hinds County. On May 15, 1989, the circuit court, finding the Board's decision was not supported by substantial evidence, vacated the order of the Board.[1] Faircloth appeals contending that the circuit court erred in reversing the action of the Hinds County Board of Supervisors in rezoning his property.

II.
The classification of property for zoning purposes is a legislative rather than a judicial matter. W.L. Holcomb, Inc. v. City of Clarksdale, 217 Miss. 892, 900, 65 So.2d 281, 284 (1953). The order of the governing body may not be set aside unless it is clearly shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis. Barnes v. Board of Supervisors, DeSoto County, 553 So.2d 508, 510 (Miss. 1989); Hinds County Board of Supervisors v. Covington, 285 So.2d 143, 144 (Miss. 1973). The action of the Board of Supervisors in enacting or amending an ordinance, or its action of rezoning, carries a presumption of validity, casting the burden of proof upon the individual or other entity asserting its invalidity. Ridgewood Land Co. v. Moore, 222 So.2d 378, 379 (Miss. 1969). On appeal we cannot substitute our judgment as to the wisdom or soundness of the Board's action. Currie v. Ryan, 243 So.2d 48, 52 (Miss. 1970); Moore v. Madison County Bd. of Supervisors, 227 So.2d 862, 864 (Miss. 1969). We have stated that where the point in controversy is "fairly debatable," we have no authority to disturb the action of the zoning authority. Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987); Broadacres, Inc. v. City of Hattiesburg, 489 So.2d 501, 505 (Miss. 1986).
Prerequisite to property reclassification from one use to another is proof by clear and convincing evidence either (1) that a mistake was made in the original zoning or, (2) that a change in the character of the neighborhood has occurred to such an extent as to justify rezoning and that a public need exists for such action. Woodland Hills Conservation Assn. v. City of Jackson, 443 So.2d 1173, 1181 (Miss. 1983); Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736, 740 (Miss. 1980). In determining the factual issues in rezoning, the Board could consider not only the information obtained at the hearing but also their own common knowledge and the familiarity with the ordinance area. Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1327 (Miss. 1982). Furthermore, hearsay evidence may be admitted and considered by the Board in making its decision. Tauber v. County Bd. of Appeals for Montgomery County, 257 Md. 202, 262 *944 A.2d 513, 518 (1970); Eger v. Stone, 253 Md. 533, 253 A.2d 372, 377 (1969).

A.
In this case, Joseph Lusteck, president of a real estate planning consultant firm, qualifying as an expert, testified and gave affidavit on behalf of Faircloth stating:
(a) Two properties in the vicinity of the Faircloth parcel had recently been rezoned from commercial to industrial. One tract was used for a large warehouse and the other for mobile homes;
(b) In the vicinity of the Faircloth property are seven commercial operations and three sand mining operations;
(c) Commercial extraction of sand from Faircloth's property and other properties in the vicinity pre-dates the Hinds County zoning ordinance many years, with no abandonment of operations;
(d) The Faircloth property is unimproved, vacant land and historically was used as a sand source;
(e) Strict enforcement of the zoning ordinance without recognition of pre-existing use status prohibits sand extraction in commercial and residential districts;
(f) In light of the long established use prior to ordinance enactment, inclusion of Faircloth's property in a zoning district that prohibits the property's prior and existing use should be recognized as a mistake;
(g) Commercial sand extraction is the highest and best use for the property;
(h) The property is not in an approximate location for presently permitted residential use;
(i) Continued sand extraction from the property will neither adversely affect surrounding properties nor be detrimental to public interest;
(j) The rezoning will help to correct a mistake that resulted in an established pre-existing use being zoned out of existence; and
(k) The rezoning will not adversely affect adjacent properties nor otherwise be detrimental to the public welfare.
The clerk of the Hinds County Planning Commission stated that the zoning ordinance had, prior to the hearing on Faircloth's petition, been interpreted to include commercial extraction of sand as a permitted use of property classified as "agricultural."
When asked by a Board member if he knew that sand mining was not permissible on property zoned commercial under the ordinance, the Planning Commission clerk stated that he was unaware of the prohibition until it was called to his attention earlier in 1986.
Faircloth asserts that the Board's action of rezoning may be affirmed on the basis of a mistake made in the original zoning ordinance which classified the property as commercial and residential instead of agricultural. Neither commercial nor residential classification permit commercial extraction of sand although, admittedly, this use was in effect prior to and at the time of the ordinance enactment.
In this case, strict application of the zoning ordinance to the classifications originally assigned Faircloth's property would prohibit the only use made of the property. Moreover, the evidence showed that the property is not in an appropriate location for presently permitted residential use. The Faircloth property, and other properties in the vicinity, when originally classified, consisted of unimproved, vacant land devoted primarily to sand mining. The original classification at the time of the ordinance enactment failed to bear a reasonable relation to its actual use. While the mere fact that vacant, unimproved land is adaptable to better uses would not prevent the governing authorities from zoning it residential, the classification must rest upon some reasonable link to its actual or adaptable use. See Forbes v. Hubbard, 348 Ill. 166, 180 N.E. 767 (1932).
We hold that the evidence more than supported a finding that a mistake was made in the original zoning ordinance, and the Board's decision to rezone Faircloth's *945 property was not arbitrary or capricious. The circuit court erred in reversing the decision of the Board.

B.
Objectors maintain that sand mining subsequent to enactment of the zoning ordinance was simply a nonconforming use which, pursuant to Article X, § 1000(1) of the ordinance, is not transferable from one owner to another. With this foundation, objectors point to the uncontradicted evidence that Faircloth purchased the property subsequent to the zoning enactment. This sounds plausible until we remind ourselves that the right to continue a nonconforming use is not a personal right but one that runs with the land. It follows, as night follows day, that such right may not be terminated or destroyed by a change of ownership of the property. Anderson, American Law of Zoning, Vol. 1, § 6.40 (3d ed. 1986); Barrett v. Hinds County, 545 So.2d 734, 737 (Miss. 1989). Nonconforming uses fix themselves to the land, not to the owner of the land. Thus, any prohibition in the ordinance on the transfer of non-conforming uses with the land is invalid.

C.
Objectors insist that the zoning ordinance does not permit commercial removal of sand in "A Agricultural" districts, and that rezoning Faircloth's property will not achieve the desired result. This argument is unsupported by the language of the zoning ordinance itself. Moreover, the best interpretation of what the wording in the ordinance means is the manner in which it is interpreted and applied by the enacting and enforcement authorities. Columbus & Greenville Railway Co. v. Scales, 578 So.2d 275, 279 (Miss. 1991). During the hearing, the Planning Commission clerk stated unequivocally that the wording of the agricultural classification was interpreted to include commercial extraction of sand and gravel.

D.
Objectors next contend that the record fails to contain a specific affirmative finding by the Board that Faircloth met the necessary criteria for establishing that a mistake was made in the original zoning or that the rezoning is justified by changes which have occurred since the original enactment, relying on Board of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 884 (Miss. 1987).
In City of Clinton we simply emphasized the necessity of a record showing the factual basis for the findings of the governing body. Absent a record showing sufficient evidence to support the findings, it is inevitable that reversal will follow. On the other hand, while recognizing the desirability of specific findings by the zoning authority on each considered issue, we will not reverse for a lack of such specificity where a factual basis for the action is disclosed.
In this case, the record is replete with factual bases for the Board's findings and its action. The matter was considered on a petition to rezone because of a mistake made in the original zoning or, alternatively, because of changes which occurred since the enactment. The Board was not required to specifically state in its order whether its action rested on one or both of the asserted grounds because the facts supporting the action are adequately reflected in the record of proceedings.

III.
We conclude that (a) there is substantial evidence to support the Board's action in determining that a classification mistake was made in the 1974 zoning ordinance, (b) the agricultural classification as interpreted includes commercial extraction of sand, and (c) the provisions of the ordinance which prohibit transfer of a nonconforming use is an arbitrary, unreasonable, and unlawful exercise of the police power, and therefore invalid.
REVERSED AND RENDERED
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
BANKS, J., not participating.
NOTES
[1] At approximately the same time Faircloth filed his rezoning request, Donald Johnson, owner of an adjacent 10 acre tract of land, filed a similar request for the purpose of continuing his sand mining operation. Although the requests were similar, the Faircloth and Johnson cases were heard separately and given separate numbers by the county. The two cases were heard by the Board of Supervisors on the same day, one following the other. Following similar results at the county level, both cases were appealed to the Circuit Court where they were consolidated by consent of all parties. The Circuit Court's ruling reversing the Board of Supervisor's decision to rezone was embraced in one order. The appeal in this case is from the Circuit Court's single order reversing both the Johnson and Faircloth cases. However, an appeal was taken only by Faircloth.