649 So.2d 1260 (1995)
Alice Pike DEAR, Sandra Stout Lee, Diane Stout Bruce, Susan Stout Hinton and Otha Bruner Bruce, Jr.
v.
MADISON COUNTY, Mississippi acting By and Through The Madison County Board of Supervisors, and The City of Ridgeland, Mississippi.
No. 91-CA-0627.
Supreme Court of Mississippi.
January 26, 1995.
Stephen W. Rimmer, Rimmer Rawlings Harrison MacInnis & Hedglin, John F. Simon, Jr., Young Scanlon & Sessums, Jackson, for appellant.
James H. Gabriel, Pyle Dreher Mills & Dye, Jackson, G. Dewey Hembree, III, Montgomery Smith-Vaniz & McGraw, Canton, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
HAWKINS, Chief Justice, for the Court:
In November of 1990 Madison County and the City of Ridgeland brought this action for *1261 the condemnation of lands of the Appellants for the construction of a roadway. The construction was to be financed by a special assessment upon landowners abutting the new road, and the Appellants sought to offer evidence of the impact of the special assessment upon the value of the property subsequent to the taking. By Motion in Limine the county and city sought to exclude such evidence; the trial court granted the motion. The landowners have brought this appeal assigning the exclusion of the evidence as to the special assessment as the only error.
Finding that the evidence was properly excluded, we affirm.

FACTS
This action grows out of a project of Madison County and the City of Ridgeland for the construction of the Summertree Parkway running from State Highway 463 to Hanging Moss Road at I-220. During consideration of the project, it was determined that it would be financed by way of a special assessment upon abutting landowners. Enabling legislation was sought and obtained, adopted by the Mississippi Legislature as Senate Bill No. 3036 and signed by the Governor on March 31, 1989. Through this action, filed on November 20, 1991, in the Special Court of Eminent Domain of Madison County, Mississippi, the county and the city sought to condemn approximately 73,772 square feet of the Appellants property for the project, leaving them with lands fronting on the new parkway. The Statement of Values filed by the landowners included the consideration of the special assessment authorized by Senate Bill 3036. During the trial, the county and city filed their Motion in Limine asking the Court to exclude evidence and testimony regarding the special assessment as damages to the remainder of the Appellants' property after the taking. Upon hearing, the trial judge granted the motion, and a profert was made by way of the affidavit of the landowners' expert witness with his appraisal attached. The result was the reduction of the appraisers' estimate of damage to the remainder part of the landowners' property by $135,250. At the conclusion of the trial, judgment was entered for the landowners in the amount of $45,500.

DISCUSSION
The fundamental law governing the taking of lands under eminent domain in Mississippi is Article 3, § 17 of the Mississippi Constitution which mandates that "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof... ." In determining what constitutes due compensation this Court has taken an expansive view as to damages to the portion of a tract not taken. Dykes v. State Highway Commission of Mississippi, 535 So.2d 1349 (Miss. 1988), and State Highway Commission of Mississippi v. Havard, 508 So.2d 1099 (Miss. 1987). However, the question of whether increased taxes by way of a special assessment upon abutting lands including those of the condemnee for financing a public works project constitute elements of due compensation is one of first impression in Mississippi.
Neither the constitutional mandate nor the previous decisions of this Court direct that all economic events and governmental action surrounding a project should be deemed damages or factors of the compensation due the party from whom property is taken. Under most circumstances the decline in the value of a business located upon the condemnee's remaining property is not a proper element of damages. Potters II v. State Highway Commission of Mississippi, 608 So.2d 1227 (Miss. 1992). The Court recognized that our law had not yet defined all the limits saying:
Notwithstanding [the constitutional provision] we have never held compensable every diminution of value. Zoning laws and the authority to place public projects are familiar sources. "Many exchangeable values may be destroyed intentionally without compensation". Nor have we settled where the line ought be drawn. For the moment, takings are delimited by law which may or may not include all values  matters of fact. Value is the measure of due compensation attendant upon a taking or damage previously and independently *1262 defined by law. In a given case, subject to legal parameters, what is taken is a function of the complaint filed by the condemning authority. And the same of what damage is compensable.
Potters II at 1230-1231 (citations and footnote omitted).
Certainly, constitutional history does not force the conclusion that the governing authority is obligated to compensate citizens for the economic impact of every action it takes; on the contrary, government has powers that do not carry with them the duty to compensate, as is attendant to eminent domain, which extend beyond the zoning authority mentioned in Potters II. These include the authority to relocate roads and highways, Wheeler v. State Highway Commission of Mississippi, 212 Miss. 606, 55 So.2d 225 (1951), and the exercise of its police powers through the regulation of traffic control and designation of access, Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839 (1958). Likewise, the power to tax has long been held to be independent of the eminent domain power and carries with it no duty to compensate. Swayne v. City of Hattiesburg, 147 Miss. 244, 111 So. 818 (1927), aff'd per curiam, 276 U.S. 599, 48 S.Ct. 320, 72 L.Ed. 724 (1928); Union Savings Bank and Trust Company v. City of Jackson, 122 Miss 557, 84 So. 388 (1920).
In both Swayne and Union Savings the taxpayers challenged special assessments to abutting landowners for new street construction arguing that such was a taking of property without just compensation and therefore in violation of the state and federal constitutions. In the Swayne case the taxpayer acknowledged that the notice, hearing and other procedures employed by the city in the adoption of the assessment were in compliance with the appropriate statute,[1] but she argued that since the amount of the assessment far exceeded any benefit that she would receive from the project, she was being deprived of her property without just compensation. Rejecting that position, the Court made clear that "Section 17 of the Constitution of this state, which prohibits the taking or damaging of private property for public use except on due compensation being first made to the owner, has no application to the taxing power of the state...." Swayne, 147 Miss. at 255, 111 So. at 820.
Of course, to say that an assessment may be imposed without compensation does not alone dispose of this case since the issue before the Court is whether an assessment to be imposed upon the remaining property is a proper element to be considered in determining the value of the remaining property which will be burdened by the tax. In a pure commercial appraisal, the anticipated tax burden upon a property might well be a necessary consideration as might the various enhancements resulting from the taking be treated as enhancements. However, in determining values for eminent domain purposes there are special rules that must be applied. "If less than the whole of a defendant's interest in property is taken, nothing shall be deducted therefrom on account of the supposed benefits incident to the public use for which the petitioner seeks to acquire the property." Miss. Code Ann. § 11-27-21 (1972). Regardless of appraisal standards applied for other purposes, this Court has long held to the rule that in condemnation proceedings neither general benefits nor general injuries to the remaining property are to be considered. Mississippi State Highway Commission v. Hancock, 309 So.2d 867 (Miss. 1975); Pearl River Valley Water Supply District v. Brown, 254 Miss. 685, 182 So.2d 384 (1966), corrected 254 Miss 685, 184 So.2d 407; Mississippi State Highway Commission v. Colonial Inn, Inc., 246 Miss. 422, 149 So.2d 851 (1963); Mississippi State Highway Commission v. Stout, 242 Miss. 208, 134 So.2d 467 (1961), overruled in part Leflore v. Mississippi State Highway Commission, 390 So.2d 284 (Miss. 1980); Mississippi State Highway Commission v. Hillman, *1263 189 Miss. 850, 198 So. 565 (1940). In Colonial Inn general benefits and injuries are defined as those shared generally by the neighborhood in which the project is located.
No argument is made by the landowners here that the special tax assessment is limited to themselves or to those whose lands are taken; rather, the tax is acknowledged to be imposed upon those abutting the parkway generally. It is thus clear that the assessment is an action under the taxing power of the government applicable generally to those in the area and that, as such, should be excluded from the valuation process.
Although this question has never before been presented to this Court, it has been considered in other jurisdictions. In states which do not allow consideration of the impact of the improvements to enhance the value of the retained land after the taking, the courts seem universally to disallow consideration of special assessments associated with the construction as damages. See annotation, Eminent Domain: Consideration of the Fact That Landowner's Remaining Land Will Be Subject to Special Assessment in Fixing Severance Damages, 59 A.L.R. 3rd 534 (1974). In City of Baldwin Park v. Stoskus, 8 Cal.3d 563, 503 P.2d 1333, 105 Cal. Rptr. 325 (1972), the City of Baldwin Park condemned a strip of land for the construction of a street and a storm drain. This action followed the creation of a special assessment district. At trial the court granted the city's motion to exclude all evidence as to the assessment, and, after judgment, the landowner appealed. The California Supreme Court in upholding the trial judge's decision first observed that the imposition of the assessment lien was not the direct result of the taking or of the construction, saying that similar assessments presumably were levied upon all the property in the district benefitted by the improvements. It was further observed that special assessments are generally acknowledged to be a function of the taxing power, not the power of eminent domain.
As has been observed in the authorities cited, if the state of the law were different, peculiar anomalies would be imposed upon the taxation and eminent domain schemes of government. If parties whose lands were taken could receive as damages the amount of the assessment (or the present value of anticipated tax payments over the life of the assessment) they would be in the position of receiving the benefits of the improvements while avoiding the tax that their neighbors would pay for those improvements, in addition to receiving the value of the land taken. Furthermore, in states like Mississippi where the enhancements of the improvements to the remaining property must be excluded from consideration, to allow the amount of the taxes as damages would result in giving the landowner a full rebate of his gross assessment without adjusting it for any enhancements.
In opposing this appeal, the county and city have raised a subsidiary issue as to the manner in which and the purpose for which the landowners sought to include the assessment in their appraisal. They urge that even if the Court were to find the assessment to be a proper element in establishing the market value of the property, the owners' appraiser has set it out as a separate item of special damages. Relying on State Highway Commission of Mississippi v. Havard and Mississippi State Highway Commission v. Stout, they correctly state the rule that in an eminent domain proceeding no items may be established as separate elements of damage but each must be considered only to the extent that they have an effect on the market value. However, having before us only the proffered Affidavit of Hugh Hogue and his appraisal, it does not appear clear that such was the purpose of the landowners or that the trial judge would have allowed their use to establish special damages. In any event, in view of our ruling on the principal issue before us approving the exclusion of special assessments by the trial court, it is not necessary to decide this point.
Thus, we conclude that where public improvements are to be financed by a special assessment upon a class of property owners, in this case those abutting the proposed parkway, a condemnee is not to be allowed to claim the present value of the assessment in diminution of the value of the remainder of his property after a portion has been taken. *1264 Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
PRATHER, P.J., and SULLIVAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE, J.
PITTMAN and BANKS, JJ., not participating.
DAN M. LEE, Presiding Justice, dissenting:
In deciding this case of first impression, the majority erroneously determines that a landowner who has had part of his land taken through eminent domain proceedings may not offer as evidence of diminution in value of the remaining property the amount of the special assessment tax that is inescapably intertwined with the eminent domain taking. Accordingly, I believe the evidence proffered by the Appellants as to the effect the special assessment would have on the market value of the Appellants' remaining property should have been admitted. Therefore, I respectfully dissent.
In the case at bar, the Appellees took land from the Appellants to build a road on their former property. The Appellees then caused the Appellants to pay for the road through a special tax assessment on their remaining property. Now the Appellees argue that the lower court was correct in not allowing the Appellants to fully develop the after-taking market value of their remaining land. The issue in this case is simple. Should the Appellants be permitted to introduce into evidence the special tax assessment that burdens their remaining property after part of their property was taken by eminent domain? I suggest that the evidence is admissible and that the lower court erred in preventing the Appellants from establishing how the special assessment affects the before-and-after value of their property.
Over fifty-four years ago this Court decided Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940), and clearly established our guidelines for determining damages in an eminent domain taking case. In Hillman, we said:
The before and after taking rule being the measure of damages applicable to this case, it follows that the appellees cannot recover damages for specific injuries to their remaining land, but that evidence of such injuries is competent if, but not unless, they would affect the market value of the remaining land. (citations omitted) (emphasis added).
Hillman, 189 Miss. at 869, 198 So. at 570. See also Mississippi State Highway Commission v. Hall, 252 Miss. 863, 174 So.2d 488, 491 (1965). This language is just as viable today as it was when Hillman was decided in 1940. In Hillman, we discussed market value and stated:
"Land has no market value, in the sense that stocks, bonds, and other public securities have a market value, or even as the common and ordinary articles of commerce have such market value; and because thereof the rules of evidence for the proof of the value of the land are modified to meet the circumstances of the situation." Levee Commissioners v. Dillard, 76 Miss. 641, 650, 25 So. 292, 294. It would be impossible, and is wholly unnecessary, for us to here discuss the modifications of the general rules of evidence as to market value of land. It will be sufficient now to say that "the market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it" (internal citations omitted), in proving which, as to land, "All the facts as to the condition of the property (land) and its surroundings, its improvements and capabilities, may be shown and considered in estimating its value. Of course circumstances and conditions tending to depreciate the property are as competent as those which are favorable." (citation omitted) (emphasis added).
Hillman, 189 Miss. at 869-70, 198 So. at 570. See also Mississippi State Highway Commission v. McArn, 246 So.2d 512, 515 (Miss. 1971) (In arriving at the before and after value, a witness may testify as to any *1265 injuries which depreciate the value of the remaining land provided the witness connects such injuries with the before and after value and considers them not as a specific item of damage but bearing on such market value). Therefore, in the case sub judice, the Appellants' expert testimony should have been admitted to show how the special assessment taxes on their remaining land diminished its market value.
Recently, in Potters II v. State Highway Com'n, 608 So.2d 1227 (Miss. 1992), we correctly stated that "[a] before-and-after rule that `swallows and absorbs' all specific elements of damages, State Highway Commission of Mississippi v. Havard, 508 So.2d 1099, 1101 (Miss. 1987), may not on principle exclude anything that affects the before or after value." (emphasis added). In the case sub judice, the Appellants properly sought to introduce evidence that would shows that the market value of their remaining property is diminished. To suggest that a special assessment that arises out of an eminent domain taking does not diminish the market value of the remaining property encumbered by the special assessment ignores reality. The Appellants' remaining property will be encumbered by the special assessment for twenty years and it certainly seems that a prospective buyer of the remaining property would consider this special assessment negatively when seeking to purchase said property.
I would allow the evidence of the special assessment to be submitted to the jury under the before and after rule for its consideration as damages to the remainder. The jury would then be free to determine the weight and credibility to be given the evidence. Accordingly, I respectfully dissent.
McRAE, J., joins this opinion.
NOTES
[1] Although the record in this case does not indicate the procedures followed by Madison County and the City of Ridgeland and no issue is raised as to those proceedings, it is worth noting that the briefs indicate that the landowners were aware of the lengthy discussions and negotiations for the financing of the parkway and objected throughout the process and that following notice by the Board of Supervisors to the affected property owners, the Appellants appeared and protested the project.