724 So.2d 1109 (1998)
Paul MATHIS, Jr., Elmertha Burton Mathis, William Noel Harris, Individually and on Behalf of a Class of Claimants Who Filed Objections to the Action Taken by the City Council, Appellants,
v.
CITY OF GREENVILLE, Appellee.
No. 97-CA-00514 COA.
Court of Appeals of Mississippi.
December 18, 1998.
*1110 William Noel Harris, Johnnie E. Walls, Jr., Attorneys for Appellants.
G. Kenner Ellis, Jr., Attorney for Appellee.
BEFORE THOMAS, P.J., DIAZ AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. This case comes to the Court on appeal from the Circuit Court of Washington County. Paul Mathis is a resident of Tampa Drive and its contiguous and/or adjoining streets in the City of Greenville. Mathis appeals from a judgment entered on April 15, 1997 by the Circuit Court of Washington *1111 County affirming the Greenville City Council's decision of August 20, 1996, removing the "No Thru Truck" traffic restriction on Tampa Drive, thereby reopening the "Farm-to-Market" route for commercial trucks. Feeling aggrieved, Mathis raises the following issues:
I. THE DECISION OF THE GREENVILLE CITY COUNCIL TO REMOVE THE "NO THRU TRUCK TRAFFIC" SIGNS WAS ARBITRARY, CAPRICIOUS AND NOT BASED UPON SUBSTANTIAL EVIDENCE
II. THE DECISION OF THE GREENVILLE CITY COUNCIL WAS ALSO MADE FOR POLITICAL AND/OR PERSONAL REASONS TO ADVANCE/FACILITATE NARROW, PRIVATE INTEREST AT THE EXPENSE OF THE TAMPA DRIVE RESIDENTIAL NEIGHBORHOOD
III. THE GREENVILLE CITY COUNCIL'S DECISION CONSTITUTES AN UNCONSTITUTIONAL TAKING OF PROPERTY RIGHTS AND DIMINUTION OF PROPERTY VALUES WITHOUT DUE PROCESS OF LAW
IV. THE RESULTANT EFFECT OF THE GREENVILLE CITY COUNCIL'S DECISION IS THE IMPOSITION OF SERIOUS THREAT TO THE HEALTH, SAFETY AND WELFARE OF THE PROPERTY OWNERS, RESIDENTS, THEIR CHILDREN AND INVITEES
V. THE DECISION OF THE GREENVILLE CITY COUNCIL CREATED AN IMPERMISSIBLE PUBLIC NUISANCE
VI. WHILE NOT STATED AS SUCH, THE DECISION OF THE CITY COUNCIL CONSTITUTES A REZONING OF PROPERTY AND TAMPA DRIVE AS A COMMERCIAL TRUCK ROUTE
VII. PROHIBITING COMMERCIAL TRUCK TRAFFIC ON RESIDENTIAL CITY STREETS IS VALID AS A MATTER OF LAW
¶ 2. Considering the facts and applicable law, we affirm.

FACTS
¶ 3. On August 20, 1996, the City Council of Greenville conducted a public hearing addressing the issue of reopening the Tampa Road thoroughfare to "Thru Truck Traffic". The thoroughfare was originally intended, designed, and constructed by Washington County as a "farm-to-market" road in the early 1970's. Tampa Drive connects U.S. Highway 82 West with the old Mississippi Highway No. 1.
¶ 4. In 1989, the Tampa Drive area was annexed into the city of Greenville and the development of single family residences along Tampa Drive and its contiguous and/or adjoining streets increased. We note that at some point in time, as it is unclear from the record and briefs, that between the annexation of Tampa Drive in 1989 and the Council's decision on August 20,1996 to remove the restriction, "No Thru Trucks" signs have been erected, then removed, and then replaced during periods of road construction work.
¶ 5. During the August 20, 1996 Council meeting, testimony was given by both those in favor of and in opposition to the lifting of the "No Thru Truck" restriction. After hearing debate and testimony, the Council voted unanimously (6-0) to remove the "No Thru Truck" restriction. From this decision, Mathis filed a Bill of Exceptions in the Circuit Court of Washington County on August 23, 1996. On September 25, 1996, an order was entered, wherein, the parties agreed to submit the issue to the circuit court limited to the record as presented by the Bill of Exceptions, without additional expansion of the record. On April 15, 1997, Judge Sanders issued her Opinion and Order affirming the Council's April 15, 1996 decision to lift the "No Thru Truck" restriction on Tampa Drive.

STANDARD OF REVIEW
¶ 6. Our standard of review for appeals perfected under Miss.Code Ann. § 11-51-75 (1972) is well established. We proceed with a restricted scope of judicial review and are limited to a review of the:

*1112 record made before the [city council], of the testimony made or proffered, to determine whether or not the acts and orders of the [city council] are reasonable and proper or arbitrary or capricious or beyond the power of the [city council] to make or whether they violate any constitutional right of the complaining party.
Riley v. Jefferson Davis County, 669 So.2d 748, 750 (Miss.1996) (quoting Thornton v. Wayne County Election Comm'n, 272 So.2d 298, 301-02 (Miss.1973)).
¶ 7. The party challenging the governing body bears the burden of proof showing that the decision rendered is "arbitrary, capricious, discriminatory, or beyond the legal authority of the city board, or unsupported by substantial evidence." McWaters v. City of Biloxi, 591 So.2d 824, 827 (Miss.1991) (quoting Ridgewood Land Co. v. Moore, 222 So.2d 378, 379 (Miss.1969)); See also Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991); Barnes v. Board of Sup'rs, DeSoto County, 553 So.2d 508, 510 (Miss.1989). In addition, our standard of review prevents the substitution of our judgment in place of the council's wisdom and soundness used in reaching their decision. Faircloth, 592 So.2d at 943; Currie v. Ryan, 243 So.2d 48, 52 (Miss.1970). The governing body is free to use "their own common knowledge and familiarity" of the area in making its decision, in addition to the testimony and debate provided at the hearing. Faircloth, 592 So.2d at 943. So long as the governing body's decision is "fairly debatable," we are without authority to supplant the municipality's legislative action. McWaters, 591 So.2d at 827.
¶ 8. Finally, in reviewing the governing body's decision we are mindful that: "`fairly debatable' is the antithesis of arbitrary and capricious. If a decision is one which could be considered `fairly debatable,' then it could not be considered arbitrary or capricious...." City of Biloxi v. Hilbert, 597 So.2d 1276, 1281 (Miss.1992) (quoting Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss.1987)). With this standard in mind, we now address the issues.

ANALYSIS

I.

THE DECISION OF THE GREENVILLE CITY COUNCIL TO REMOVE THE "NO THRU TRUCK TRAFFIC" SIGNS WAS ARBITRARY, CAPRICIOUS AND NOT BASED UPON SUBSTANTIAL EVIDENCE
¶ 9. Mathis argues that the Council's August 20, 1996 decision to remove the "No Thru Truck" restriction on Tampa Drive was arbitrary, capricious and not based upon substantial evidence. Mathis maintains that the Council's decision failed to properly consider the negative impact the removal of the "No Thru Truck" restriction would have on the Tampa Drive residential neighborhood. Specifically, Mathis contends that the Council's decision fails to provide the Tampa Drive residents the same "sensible and favored" treatment as has been given other neighborhoods under similar circumstances.
¶ 10. Mathis points to a video tape of the August 20, 1996 meeting as support for his argument that the Council's decision was arbitrary, capricious and not based on substantial evidence. We have made a careful review of the evidence, including the meeting video tape, and have limited our review as such, to that which was presented before the Greenville City Council during the August 20, 1996 meeting. We are limited to a review of the evidence and testimony presented before the Council on August 20, 1996 without additional expansion of the record. Thornton, 272 So.2d at 301-02.
¶ 11. From the August 20, 1996 meeting, we note the following:
1. The issue concerning the removal of the "No Thru Truck" restriction on Tampa Drive had been raised previously for discussion in numerous council meetings without reaching a decision.
2. During the August 20, 1996 meeting, approximately 45 to 50 minutes were devoted to a debate of the Tampa Drive issue.
3. The discussion was open to the public, in which both the opposition and the proponents were allowed to voice his *1113 or her concerns. The Council also reviewed a report and evaluation provided by the City Engineer at the Council's request.
4. Four proponents consisting of truckers, farmers, and grain operators voiced their opinions and interests. Likewise, five residents of the Tampa Drive neighborhood addressed the Council, including Mathis, and voiced their concerns and opinions against removing the restriction.
5. Mathis provided the Council with approximately twenty-four signed and written objections to the restriction's removal from members of the Tampa Drive neighborhood.
6. The Greenville City Council voted unanimously (6-0) to remove the Tampa Drive restriction.
¶ 12. In reaching their decision, we cannot say that the Council's decision was arbitrary, capricious and lacking in substantial evidence. Quite to the contrary, all indications point to a reasonable and "fairly debatable" decision involving the exercise of a municipality's legislative authority and police power. The exercise of a municipality's police power includes the "regulation of vehicular traffic, speed regulations and weight limits." Waste Control, Inc. v. Tart, 506 So.2d 286, 287 (Miss.1987).
¶ 13. In reaching its conclusion, it is readily apparent that the Council was faced with deciding between two competing private interests, those of the Tampa Drive residents and those of the area farmers, truckers, and agricultural businesses. In this case the latter of the two interests prevailed in the removal of the "No Thru Truck" restriction. The weighing and balancing of competing interests, as well as what is best for the community as a whole, is well within the province of the Council's legislative authority and police power. The Council has been duly elected to represent all members of its community. As the duly elected legislative body charged with enacting rules and laws which affect the health, safety, welfare and economic aspects of their community, the council's decisions cannot be disturbed absent a showing of arbitrariness, capriciousness, or lack of substantial evidence in their decision making process. This assignment of error is meritless.

II.

THE DECISION OF THE GREENVILLE CITY COUNCIL WAS ALSO MADE FOR POLITICAL AND/OR PERSONAL REASONS TO ADVANCE/FACILITATE NARROW, PRIVATE INTEREST AT THE EXPENSE OF THE TAMPA DRIVE RESIDENTIAL NEIGHBORHOOD
¶ 14. Mathis contends that the true reason for the Council's decision to remove the "No Thru Truck" restriction was motivated for purely political and/or personal reasons. Additionally, Mathis maintains that the Council decided the issue in favor of the truckers and farmers for the purpose of assisting their private interest in avoiding compliance with state law, specifically the avoidance of a mandatory State Weigh Station. However, we note from the outset that the record is completely devoid of any evidence to support these contentions.
¶ 15. Mathis is correct that the removal of the "No Thru Truck" restriction on Tampa Drive would create an alternative route to the mandatory State Weigh Station on Highway 82. However, that fact, standing alone without additional evidence in support thereof, is insufficient to raise issues of impropriety by the Council in reaching their conclusion. Mere allegations without evidential support will not survive on appeal. Mathis has failed to provide any evidence to support his argument that the motivating factor behind the Council's decision was for any other purpose than to further legitimate governmental goals. We will not consider unsupported assignments of error lacking an evidential basis. Mississippi Gaming Comm'n v. Treasured Arts, Inc., 699 So.2d 936, 940 (Miss.1997).
¶ 16. Despite the lack of evidence as support for Mathis's allegation that a backdrop of political and personal motivating reasons were actually behind the Council's decision removing the "No Thru Truck" restriction, we find that the reopening of Tampa Drive to commercial traffic was well within the Council's legislative authority and police powers. This assignment is without merit.

*1114 III.

THE GREENVILLE CITY COUNCIL'S DECISION CONSTITUTES AN UNCONSTITUTIONAL TAKING OF PROPERTY RIGHTS AND DIMINUTION OF PROPERTY VALUES WITHOUT DUE PROCESS OF LAW
¶ 17. Mathis argues that the Council's decision to remove the restriction constitutes an unconstitutional taking of property rights and diminution of property values without due process of law. Mathis contends that the Council failed to give proper notice of the pending matter before the Council, thereby denying the Tampa Drive residents due process of law.
¶ 18. We will address the issue of Mathis's claim that notice was not forthcoming by a simple review of the evidence and testimony submitted before the Council during the August 20, 1996 meeting. During this meeting no less than five residents of the Tampa Drive neighborhood gave testimony against the removal of the restriction, as did members in support of the restriction's removal. Approximately twenty-four written and signed form letters by the Tampa Drive residents, expressing interests against the removal of the restriction, were submitted to and accepted by the Council. The issue had been before the Council previously on several occasions, in which Mathis personally addressed the restriction before the Council during at least one previous meeting to the August 20, 1996 decision. It is readily apparent that the residents had received notice of the issue; this is evident in the presence of five residents and the over 24 written letters speaking out against the restriction's removal.
¶ 19. Mathis claims that an unconstitutional taking of property rights and a diminution of property values occurred as a result of the Council's decision. In support of this contention, Mathis argues that "[d]iminution in property value, standing alone, can establish a `taking,'" and directs us to Village of Euclid, Ohio v. Ambler Realty Co. 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) and Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) as authority. We have conducted a review of Euclid and Penn Central and will assume that Mathis has misread the holdings of these cases in conducting his research.
¶ 20. In Penn Central, the appellants filed suit against the City of New York following the refusal of the New York City Landmarks Preservation Commission to grant approval of plans for the construction of a 50-story office building over Grand Central Terminal, which had been designated a "landmark". Penn Central Transportation Co. argued that the application of the preservation law constituted a "taking" of the property without just compensation and that as a result were denied their property rights without due process. Penn Central argued that as a result of the restriction, they were limited economically in their use of the property thereby constituting a diminution in the property's value. The United States Supreme Court rejected this argument and held that mere diminution in property value, standing alone, cannot establish a "taking." Penn Central 438 U.S. at 131, 98 S.Ct. 2646.
¶ 21. The Court went further in stating that the "government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." Id. at 124, 98 S.Ct. 2646. This is precisely the issue in the case before us today. The Council enacted a "general law" removing a restriction on commercial traffic.
¶ 22. The Penn Central Court cited to Village of Euclid, Ohio in reaching its conclusion. In Village of Euclid, Ohio, the Court reversed a lower court's ruling which declared a municipality's zoning restriction unconstitutional. The Court held that if the legislative action in the classification for zoning purposes is "fairly debatable", then the legislative judgment must not be disturbed. Euclid, 272 U.S. at 388-89, 47 S.Ct. 114. The zoning ordinance in Village of Euclid, Ohio constituted a 75% diminution in value.
¶ 23. We are additionally persuaded by the Mississippi Supreme Court's holding in Dear v. Madison County By and Through Madison County Bd. of Sup'rs, 649 So.2d 1260 (Miss.1995). In Dear, condemnation proceedings were begun and the landowner *1115 sought to introduce evidence regarding the impact of special assessment upon the value of his land. In deciding against Dear, the court held that the present value of the special assessment was not an element of due compensation. The court went further and stated that:
Certainly, constitutional history does not force the conclusion that the governing authority is obligated to compensate citizens for the economic impact of every action it takes; on the contrary, government has powers that do not carry with them the duty to compensate, as is attendant to eminent domain, which extend beyond the zoning authority mentioned in Potters II. These include the authority to relocate roads and highways, Wheeler v. State Highway Commission of Mississippi, 212 Miss. 606, 55 So.2d 225 (1951), and the exercise of its police powers through the regulation of traffic control and designation of access, Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839 (1958).
Dear, 649 So.2d at 1262.
¶ 24. Therefore, under these holdings, we cannot conclude that the residents of the Tampa Drive neighborhood have been denied their due process of law or have suffered an unconstitutional taking of property rights and diminution of property values as a result of the exercise of a governmental body's police power in establishing the "general law" for the good of the community as a whole. This assignment is meritless.

IV.

THE RESULTANT EFFECT OF THE GREENVILLE CITY COUNCIL'S DECISION IS THE IMPOSITION OF SERIOUS THREAT TO THE HEALTH, SAFETY AND WELFARE OF THE PROPERTY OWNERS, RESIDENTS, THEIR CHILDREN AND INVITEES

V.

THE DECISION OF THE GREENVILLE CITY COUNCIL CREATED AN IMPERMISSIBLE PUBLIC NUISANCE
¶ 25. Mathis argues that the removal of the restriction from Tampa Drive has resulted in the imposition of serious threat to the health, safety and welfare of the residents of the Tampa Drive neighborhood. In addition, Mathis argues that the increased commercial truck traffic has created an impermissible public nuisance. In support of his contentions, Mathis argues that this threat is evident from traffic analysis of Tampa Drive conducted on September 6, 1996 and September 9, 1996 by VideoGenics. Mathis argues that the analysis conducted reveals an increase of commercial truck traffic "one hundred (100) fold", and that the commercial trucks are speeding in excess of the posted speed limit for Tampa Drive.
¶ 26. We have stated that our review is limited in scope and that we may not go outside the record as was presented to the Council when their decision was made. Riley, 669 So.2d at 750. We must presume the Council exercised "wisdom and soundness" in reaching their decision when the issue is "fairly debatable". Currie v. Ryan, 243 So.2d 48, 51-52 (Miss.1970). Clearly the analysis conducted on September 6, 1996 and September 9, 1996 were events beyond the August 20, 1996 decision and are therefore outside the record as presented to the Council. These issues are procedurally barred from review.

VI.

WHILE NOT STATED AS SUCH, THE DECISION OF THE CITY COUNCIL CONSTITUTES A REZONING OF PROPERTY AND TAMPA DRIVE AS A COMMERCIAL TRUCK ROUTE
¶ 27. As previously discussed, the actions taken by the Council are presumed to be a valid exercise of a governing body's legislative authority and police powers, unless a showing is made that the decision was arbitrary, capricious or lacking in substantial evidence. All indications point to a "fairly debatable" issue, from which, the Council exercised its authority to enact a general law. The enactment of traffic ordinances and regulations are well with in the confines of this authority.
*1116 ¶ 28. Nothing in the Council's decision amounts to a rezoning of the Tampa Drive neighborhood. The property rights of the Tampa Drive residents are intact and untouched. This assignment is without merit.

VII.

PROHIBITING COMMERCIAL TRUCK TRAFFIC ON RESIDENTIAL CITY STREETS IS VALID AS A MATTER OF LAW
¶ 29. Mathis correctly argues that the prohibition of commercial truck traffic thru residential neighborhoods is valid as a matter of law. However, it is equally true that a municipality's regulation of commercial traffic thru its residential neighborhoods in general is valid as a matter of law. Therefore, for reasons previously discussed, this issue is meritless.
¶ 30. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE AND SOUTHWICK, JJ., CONCUR.
KING, J., NOT PARTICIPATING.