## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01515-SCT

*FONDREN NORTH RENAISSANCE, WALTER LYDICK, JR. AND STANFORD L. BOWMAN*

*v.*

*MAYOR AND CITY COUNCIL OF THE CITY OF JACKSON, MISSISSIPPI, COLUMBIA PACIFIC MANAGEMENT, INC. AND ST. ANDREW'S EPISCOPAL DAY SCHOOL*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/1998 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRANK T. MOORE, JR. |
| | THOMAS I. STARLING, JR. |
| ATTORNEYS FOR APPELLEES: | HENRY E. CHATHAM, JR. |
| | W. RODNEY CLEMENT, JR. |
| | JOHN ERNEST WADE, JR. |
| | ROBERT P. WISE |
| | HEATHER PHILO WAGNER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/21/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/12/99 |

## EN BANC.

## SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. Fondren North Renaissance, Walter Lydick Jr., and Stanford L. Bowman (collectively referred to as FNR) appeal the Jackson City Council's decision to rezone a tract of land on Old Canton Road from special use for a school to a Planned Unit Development ("PUD") as a residence for the independent elderly. The Circuit Court of the First Judicial District of Hinds County affirmed the Jackson City Council's decision. FNR appeals and asserts that the actions of the Jackson City Council were arbitrary and capricious because (1) the character of the neighborhood had not changed and no public need existed for the rezoning; (2) the Jackson City Council ignored the language of Miss. Code Ann § 17-1-17 (1995) by not requiring a 2/3 majority vote on the change in zoning; and (3) the rezoning does not meet the elements of the City's PUD ordinance. Because substantial evidence was presented to conclude the Jackson City Council's rezoning decision was "fairly debatable", we affirm the judgment of the circuit court.

### STATEMENT OF THE CASE AND FACTS

¶2. On March 21, 1997, Columbia Pacific Management, Inc. ("Columbia") submitted an application to the zoning division of the City of Jackson to rezone approximately 6.1 acres of property located on Old Canton Road in Jackson, Mississippi. The property is owned by St. Andrew's Episcopal Day School ("St. Andrew's"), which also joined in the application. Columbia contracted to purchase the property from St. Andrew's for $650,000 with the intention of building Westminster Commons, a community for independent, elderly persons.

¶3. On May 28, 1997, the City Planning Board conducted a public hearing on Columbia's application to rezone the school property, which had previously been a Special Use, R-1A and C-2, to a PUD. At this meeting, the Planning Board was presented with protests signed by more than 365 residents of the community who were opposed to the proposed rezoning. In response to those protests, Columbia cited several changes it made to the plans for Westminster Commons in order to accommodate the concerns of the community, including moving the building away from Old Canton Road, decreasing the size of the building, and agreeing to provide a two-acre landscaped buffer between the building and Old Canton Road. Columbia also contended that the character of the neighborhood had changed due to a combination of condominiums and apartments which had recently been built in the surrounding areas. The Planning Board voted 8-1, with one recusal, to approve the rezoning. Fondren North Renaissance ("FNR"), a non-profit corporation, appealed the Planning Board's recommendation to the City Council.

¶4. On August 6, 1997, the City Council conducted a hearing on FNR's appeal. This hearing was continued to August 19, 1997, at which time the City of Jackson approved the rezoning application by a 4-3 majority vote of the City Council members present. On August 28, 1997, FNR filed a Bill of Exceptions challenging the decisions of the Jackson City Council. St. Andrew's and Columbia were later allowed to intervene as Appellees. On August 24, 1998, the Circuit Court of the First Judicial District of Hinds County, sitting as an appellate court, affirmed the City Council's decision to rezone the property and dismissed the appeal against the Mayor and City of Jackson with prejudice.

¶5. On September 23, 1998, FNR filed its notice of appeal to this Court. FNR challenges the Jackson City Council's decision on the grounds that the Council's decision to rezone was both arbitrary and capricious. First, FNR asserts that no clear and convincing evidence was presented to demonstrate both a change in the character of the neighborhood and a public need to justify the rezoning. Second, FNR argues that the City Council ignored the language of Miss. Code Ann. §17-1-17 (1995), which requires a 2/3 supermajority vote by the City Council on rezoning when 20% or more of nearby landowners protest. Third, FNR argues that the proposed rezoning should not be classified as a planned unit development because it fails to conform to the City's PUD ordinance definition, specifically arguing that Westminster Commons would not become part of the community as a whole.

## STATEMENT OF THE LAW

### I.

### STANDARD OF REVIEW

¶6. The "change or mistake" rule of municipal zoning is based on the presumption that the original zoning is well planned and designed to be permanent. ***Board of Aldermen v. Conerly***, 509 So. 2d 877, 883 (Miss. 1987). It is well settled law that before a zoning board may reclassify property from one zone to another, there must be proof that either (1) there was a mistake in the original zoning, or (2) that the

character of the neighborhood has changed to such an extent as to justify reclassification, and there was a public need for rezoning. *Id.* The burden of proof to support the rezoning is upon the applicant, and both propositions must be proven by clear and convincing evidence. *Id.* at 884. Since neither party has suggested there was a mistake in the original zoning, we need only address whether the record supports the rezoning on the basis of sufficient change in the character of the neighborhood and a public need for the rezoning.

¶7. "The classification of property for zoning purposes is a legislative rather than a judicial matter." *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991). "The order of a governing body may not be set aside unless it is shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." *Id.* In other words, the judicial department of the government of this state has no authority to interdict either zoning or rezoning decisions which may be said "fairly debatable". *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988).

> Specifically, the fairly debatable standard applies to the legislative questions whether there has been a change in the character of the neighborhood and whether there is a public need for the rezoning. If these two questions may, on the matters before the Mayor and Board of Aldermen, be said fairly debatable, there is no judicial authority to interfere and the action taken by the city zoning authorities, be it pro or con the proposed rezoning, must be allowed to stand.

*Id.* "Fairly debatable" is the antithesis of arbitrary and capricious. *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987). If a decision could be considered fairly debatable then it could not be considered arbitrary or capricious. *Id.*

## II.

**WHETHER THE CITY COUNCIL'S DECISION THAT SUFFICIENT EVIDENCE OF CHANGE IN THE CHARACTER OF THE NEIGHBORHOOD AND PUBLIC NEED EXISTED TO JUSTIFY THE REZONING WAS ARBITRARY, CAPRICIOUS AND NOT FAIRLY DEBATABLE.**

### A. Change in the Character of the Neighborhood

¶8. FNR argues that the City Council's decision to rezone the property to a PUD was arbitrary, unreasonable and capricious because Columbia failed to show by clear and convincing evidence that there was both a change in the character of the neighborhood and a public need to justify the rezoning from a single family residential area to a commercial area.

¶9. Joseph A. Lusteck, of Joseph A. Lusteck & Associates, Inc., is a professional planner who evaluated Columbia's zoning petition and prepared a report which was evaluated by the City Council at the August 6, 1997, hearing. Lusteck indicated in his report that the character of the neighborhood had clearly changed due to the number of rezonings in the area and a trend toward higher density use. He also indicated that the construction of Westminster Commons would not adversely affect the real estate values of nearby residential properties. Both the Planning Board staff and Lusteck concluded that the property was not capable of development as currently zoned.

¶10. Likewise, at the August 6, 1997, hearing on FNR's appeal, Jay Stewart, the Chairman of the Board of Trustees of St. Andrew's, described changes in the character of the neighborhood since the school had first

been established at that location. Stewart testified that he had made numerous efforts over the past five years to sell the property for single-residential development but had been unable to secure any offers. He also referred to the construction of the Vieux Carre Apartments which have since been built south of the school. These apartments are leased on an annual, monthly, or weekly basis and are in "less-than-steller" condition. Stewart then referred to the Education Learning Center for troubled teenagers which has also been built in the surrounding area. In addition, he noted the construction of the Barrington, a nine-story high-rise condominium complex. Stewart also emphasized the development and expansion of the surrounding roadways, including I-55 and Frontage Road, which border the east side of the property in question.

¶11. In response to Columbia's assertions that the surrounding area has become more commercial, FNR argued that the rezonings which took place were usually from one residential classification, R-1A, to another residential classification, R-3. FNR notes that the only exception to this is the Barrington, the nine-story condominium complex. FNR argued that since the 1983 rezoning for the Barrington could include apartment complexes, that the fact they have instead used single family condominiums is evidence of the stable residential quality of the neighborhood.

¶12. The lower court held that, although the majority of rezonings in the area were for "residential purposes", nonetheless there was still "substantial evidence" of change to justify the rezoning. There have been twenty-eight changes to the zoning map in the area surrounding the property since the completion of the Official Zoning Map of the City of Jackson on May 29, 1974. The construction of apartments, condominiums, offices and schools in the area clearly indicate that the question of change in the character of the neighborhood was at the very least "fairly debatable". The Court has no authority to disturb the decision of the zoning board if the controversy is "fairly debatable." *Saunders* at 906.

### B. Public Need

¶13. In addition to showing a change in the character of the neighborhood, Columbia must show a public need for the rezoning as well. FNR contends that Columbia presented no proof of public need other than a phone call to Councilman Stokes from an elderly woman who expressed her support of the project. When deciding whether to rezone property, the City Council can not only consider information obtained at the hearing, but also its own common knowledge and the familiarity with the ordinance area. *Faircloth* at 943. Hearsay evidence may also be admitted and considered by the Board in making its decision. *Id.* Here, evidence such as the phone call may be considered in making such a decision. It should be further noted the phone call was not the only basis upon which Councilman Stokes made his decision. The transcript of the August 19, 1997, hearing shows that Councilman Stokes was "familiar with the location of the property" and "familiar with everything dealing with this vote."

¶14. First, Columbia presented evidence, by way of Lusteck's report, that there was a need for independent living facilities for the elderly. Lusteck noted that there are only six facilities in the Jackson Metropolitan area which offer primarily congregate living for the elderly. Of those six establishments, only two are located in Jackson.

¶15. Second, Columbia presented evidence that the proposed rezoning would be consistent with the City of Jackson's Future Land Use Plan, which envisions a mix of institutional and multi-family residential development between Old Canton Road and I-55. This Plan, adopted by the Jackson City Council on April 25, 1989, describes the public and institutional uses as follows:

administrative facilities for federal, state, city and county government; public parks and recreation sites; municipal airports; fire stations; police precincts; schools; churches; libraries; hospitals; cemeteries; private clubs and other private recreational facilities and other institutions.

FNR argues that approval of the rezoning would amount to "unadulterated spot zoning and rampant corruption". "Spot-zoning" is a term used by the courts to describe an amendment which is not in harmony with the comprehensive or well-considered land use plan of a municipality. *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991). Consequently, it is not spot-zoning when an ordinance or amendment is enacted in accordance with a comprehensive zoning plan. *McWaters* at 829. Columbia contends that the proposed use of this property is not only consistent with the Plan, but in fact provides even more protection of the existing neighborhoods than those contemplated by the Plan since the PUD ordinance sets forth exactly what may and may not be done with the property.

¶16. Third, Columbia asserts that the additional tax revenue which would be generated from this proposed change is another factor which should be considered when determining public need. At present, the property is non-taxable. At the August 19, 1997, hearing Councilman Barrett announced that the construction of Westminster Commons would generate ad valorem taxes at current millage rates in excess of $194,000 per year. Although an increase in tax revenue alone would be insufficient to justify a change in the zoning of the property, the increase in tax revenue taken in consideration with the other factors noted above would support a zoning change by the municipal authorities. *Currie v. Ryan*, 243 So. 2d 48, 52 (Miss. 1970); *Adams v. Reed*, 239 Miss. 437, 443, 123 So. 2d 606, 608 (1960).

¶17. Finally, counsel for FNR, conceded that there may be a need for elderly housing in Jackson. At the May 28, 1997, hearing with the Jackson City Planning Board, FNR's counsel acknowledged that "No one disagrees that there may be a need in our community." This Court, when considering all factors together, finds that Columbia has presented sufficient evidence to conclude that a public need exists and that such a need is, at the very least, "fairly debatable".

¶18. "Preserving an existing residential area is a valid city goal." *Saunders* at 906. An amendment to a zoning ordinance is not meant to be easy or otherwise the ordinance would be a meaningless scrap of paper. *Board of Aldermen* at 885-86. However, this Court does not review the evidence as it would sitting in review of a civil trial. *Saunders* at 906. "A decision by a local governing board is presumed valid, and the burden is upon the person seeking to set it aside to show that it was arbitrary, capricious and unreasonable."*Board of Aldermen* at 885. Nonetheless, it is clearly within the judicial discretion on review to reverse a rezoning ordinance adopted on insufficient proof. *Board of Aldermen* at 885. In the present case, however, substantial evidence was, in fact, presented by both sides in support their respective positions. Accordingly, the decision must be said to be at least "fairly debatable." Because this decision is "fairly debatable", it is not arbitrary, capricious, discriminatory, or unreasonable and is beyond our authority to overturn. *Faircloth* at 943. Therefore, this Court affirms the circuit court's decision which holds the change in zoning to be valid.

### III.

### WHETHER PURSUANT TO MISS. CODE ANN. § 17-1-17, THE JACKSON CITY COUNCIL'S DECISION TO DISREGARD THE SUPERMAJORITY VOTE WOULD BE ARBITRARY, CAPRICIOUS AND NOT FAIRLY DEBATABLE.

¶19. FNR argues that pursuant to Miss. Code Ann. § 17-1-17 (1995), a vote of a 2/3 majority of the 7-member City Council was necessary to approve the rezoning application because 20% of the owners of the land across the street from the front of the property were opposed to the rezoning. At the hearing on August 6, 1997, the Jackson City Council heard testimony concerning whether it should vote by simple or super majority. After a 3-3 tie vote, which defeated the motion for 2/3 majority vote, the council members decided to continue the case until the August 19, 1997, hearing, at which time the rezoning was passed by a 4-3 majority vote, and not by the 2/3 voting requirement. Miss. Code Ann. § 17-1-17 governs zoning regulations for municipalities and provides in relevant part:

> In case of protest against such change signed by the owners of twenty percent (20%) or more, either of the area of the lots included in such proposed change, or of those...directly opposite thereto, extending one hundred sixty (160) feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of two-thirds (2/3) of all the members of the legislative body of such municipality or county.

Miss. Code Ann. § 17-1-17 (1995). The party relying on the 2/3 majority voting requirement of §17-1-17 has the burden of proving that the owners of 20% or more of the area specified in the statute have protested the rezoning. *Tindall v. City of Louisville*, 338 So. 2d 998, 999 (Miss. 1976). Therefore, FNR has the burden of proof in the present case. This 20 percent showing must be made before the local governing body and cannot be raised for the first time upon appeal. *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280 (Miss. 1992).

¶20. No evidence was submitted by FNR regarding the 2/3 majority vote until the August 6, 1997, hearing on FNR's appeal, at which time FNR offered the testimony of Walter Lydick, Jr. Columbia argues that any alleged evidence presented after the meeting with the Planning Board should be disregarded by the Court. In support of this argument, Columbia asserts that the City of Jackson has enacted an ordinance which requires the record to be made at the Planning Board. This ordinance provides in relevant part as follows:

> ...within sixty (60) days after the date set in the case advertisement and receipt of the transcript and documented case record, including the recommendation of the City Planning Board, the City Council shall either approve or deny, in whole or part, the decision and recommendations of the City Planning Board *on the record of the case* or where there is need for additional information, may remand the case to the City Planning Board for further consideration, all in accordance with the provisions of Mississippi Code Annotated, Section 17-1-17 (1972).

City of Jackson, Miss., Zoning Ordinance § 1902.02A (June, 1997)(emphasis added). FNR was entitled to be heard at all critical stages of the process. *Thrash v. City of Jackson*, 498 So. 2d 801, 808 (Miss. 1986). "The [City] is vested with final authority for determining whether its procedural requisites have been met or, if it pleases, waiving them." *Thrash* at 807. Thus, the City enjoys great discretion, and Lydick's testimony was appropriately considered by the City Council when the decision to vote by majority was made.

¶21. Columbia further asserts that even if the Court does consider Lydick's testimony, FNR still failed to meet its burden of proof on the 20% issue because Lydick's testimony was unsworn and unsupported. FNR, on the other hand, asserts that Lydick's testimony "demonstrates the degree of care and practical judgment that appellants applied to the somewhat confusing task of calculating and proving the twenty percent protest requirement." Upon request by Councilman Allen, Lydick explained the basis for his

conclusion that the 20% requirement was met. However, his testimony was, at best, very confusing to the council members and done completely from memory. Additionally, there seems to be no written documentation in the record of how Lydick arrived at these figures.

> COUNCILMAN ALLEN: You're an attorney, correct? I'm reading the code, and you've given me something that is ambiguous, at best. Both sides have done due diligence, beyond belief, on this, and I've got, as we all do, three or four feet of documents. Is there not documentation of this 89 percent, i.e., a survey of the actual people that you're referring to on this 89 percent? You could not submit this in a court of law, could you?

> MR. STARLING [counsel for FNR]: No.

Lydick then asserts that they "took the tax maps to compute the acreage." In its own brief, FNR states that "Mr. Lydick's testimony, in addition to the City's own tax maps, was the only credible proof on the matter and should be dispositive in light of the salient absence of any refutation." A careful review of the record, however, indicates that no tax map was ever submitted to support these calculations. Consequently, the City Council had no evidence before it to determine if the maps were correctly used by Lydick in his calculations or if the maps used were even the appropriate maps.

¶22. It should also be noted that Lydick's calculation was based on the total square footage of a landowner's parcel, not just the portion of the landowner's parcel contained within 160 feet of the subject tract. Thus, Lydick's calculation improperly counts land that is outside of the 160 foot area specified in § 17-1-17 toward the 20% threshold.

¶23. The burden is upon the party invoking the 2/3 vote requirement to **affirmatively** prove that the owners of 20% or more of the area specified in § 17-1-17 have protested the rezoning. Where that party fails to meet the burden, a majority vote by the Board will be sufficient to require rezoning of the property. *Tindall* at 999. FNR admits in its brief that the only credible proof on this issue was Lydick's testimony, which the council members found to be ambiguous and confusing. Furthermore, Lydick was reciting figures from "memory" and was unable to identify where in the Planning Board record the information on calculating his figures was located. Sarah O'Reilly-Evans, Deputy City Attorney, also confirmed that the figures upon which FNR relied were not cited in the record. As such, FNR failed to affirmatively prove that the owners of 20% or more of the area specified in §17-1-17 protested this rezoning. Accordingly, we affirm the circuit court's decision that the supermajority vote was not required and that the actions of the Jackson City Council were neither arbitrary nor capricious.

## IV.

## WHETHER THE DECISION OF THE JACKSON CITY COUNCIL TO REZONE THE PROPERTY TO A PLANNED UNIT DEVELOPMENT WAS ARBITRARY, CAPRICIOUS AND NOT FAIRLY DEBATABLE.

¶24. The more populous areas use land not only for single or multiple residences in subdivision developments, but for new arrangements of home owners associations and planned unit developments. *Griffin v. Tall Timbers Dev., Inc.*, 681 So.2d 546, 550 (Miss. 1996). A Planned Unit Development, or PUD, is a modern alternative to traditional zoning classifications. Under a PUD ordinance, the applicant may only build exactly what it proposes to build, thus making a PUD one of the most restrictive types of

classifications available. As Councilman Barrett explained at the August 19, 1997, hearing, "the applicant is effectively seeking to downsize the current Special Use zoning, which is very broad, to a more restrictive use." The City of Jackson's PUD ordinance is set forth in Article IX-A, Section 901-A and reads as follows:

> The purpose of the Planned Unit Development (PUD) District is to permit a development that:
>
> 1. Permits more flexibility and creativity in individual planned developments while reducing improvement costs through more efficient arrangements of varied land uses, buildings, circulation systems, and infrastructure;
>
> 2. Permits innovative site plans by granting relief from more strict and fixed regulations provided for in zoning districts otherwise established by this Ordinance;
>
> 3. Encourages the preservation and enhancement of the natural amenities of land and protects the natural features of a site;
>
> 4. Permits infill development and the development of sites made difficult for conventionally designed development because of shape, size, abutting development, poor accessibility or topography and by the use of stringent design and development controls;
>
> 5. Secures more useable open and recreational space than expected by the use of conventional regulations; and
>
> 6. Provides a living, working, and shopping environment within the layout of the site that contributes to a sense of community.

City of Jackson, Miss. Zoning Ordinance, Art. IX-A, § 901-A (June, 1997).

¶25. FNR argues that of the six "purposes" set forth in Section 901-A, only three are of particular importance in the present case. First, FNR argues that the PUD ordinance would entail the destruction of natural, ecological features of the site, including loss of trees, natural vision, and sound barriers. In response, Columbia argues that the PUD ordinance would in fact preserve natural features on the site because Columbia has committed in its plans to preserve as many trees on the land as possible. Columbia also argues that it will improve the appearance of the land by removing the three vacant and vandalized buildings on the lot and replacing them with a landscaped buffer. Access from Old Canton Road has also been placed through a two-acre landscaped area. Furthermore, the current zoning of the property as commercial uses and public institution would not preserve the natural features of the property.

¶26. Second, FNR argues that the PUD ordinance fails to secure more useable open and recreational space than expected by the use of conventional regulations. FNR asserts that one of the major features of a PUD is to make parks or recreational areas for the public. However, FNR's argument is founded on a general treatise, and no such language requiring use by the general public appears in the City of Jackson ordinance.

¶27. Third, FNR argues that the project fails to provide a living, working and shopping environment within the layout of the site that contributes to a sense of community. FNR asserts that the presence of Westminster Commons will not benefit the neighborhood as a whole. In response, Columbia contends that

it has contributed to the "self-sufficiency of residents and to the sense of community" that would distinguish Westminster Commons from an apartment or condominium complex by providing a common recreation area, a common dining area, live-in staff, a beauty parlor and a gift shop. Additionally, Columbia asserts that FNR disregards the language of the ordinance which states that a PUD shall provide "a living, working, and shopping environment **within the layout of the site** that contributes to a sense of community." Columbia contends that the ordinance addresses Westminster Commons itself and not the neighborhood in which Westminster Commons is located.

¶28. In the present case, the interpretation of the City of Jackson's PUD ordinance could fairly be interpreted in more than one way. However, "the best interpretation of what the wording in the ordinance means is the manner in which it is interpreted and applied by the enacting and enforcement authorities." *Faircloth* at 945. The decision of the Jackson City Council to allow the property to be rezoned according to a PUD was neither arbitrary nor capricious, and was at least "fairly debatable." Therefore, this Court affirms the decision of the circuit court and holds the PUD rezoning to be valid.

## CONCLUSION

¶29. "The classification of property for zoning purposes is a legislative rather than a judicial matter." *Faircloth* at 943. Where, as here, there is substantial evidence supporting both sides of a rezoning application, it is hard to see how the ultimate decision could be anything but "fairly debatable." *Saunders* at 907. Therefore, the rezoning decision of the Jackson City Council was neither arbitrary nor capricious, and as such, is beyond the power of this Court to overturn. Accordingly, the judgment of the Circuit Court of the First Judicial District of Hinds County is affirmed.

¶30. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND COBB, JJ., CONCUR. WALLER, J., NOT PARTICIPATING.**