1 So.3d 862 (2007)
Earl CHILDS, Lori Gordon, Amelia Killeen, David Wheeler and Maria Beard, Appellants
v.
HANCOCK COUNTY BOARD OF SUPERVISORS, Paradise Properties Group, L.L.C. and Kudo Developers of Mississippi, L.L.C., Appellees.
No. 2006-CA-00608-COA.
Court of Appeals of Mississippi.
November 6, 2007.
Rehearing Denied June 10, 2008.
*863 Robert B. Wiygul, attorney for appellants.
Ronald J. Artigues, Bay St. Louis, Donald Rafferty, Joseph R. Meadows, Gulf Port, attorneys for appellees.
Before MYERS, P.J., BARNES and ROBERTS, JJ.

SUMMARY OF THE CASE
ROBERTS, J., for the Court.
¶ 1. This is an appeal of the Hancock County Board of Supervisor's decision to spontaneously rezone approximately one thousand acres of coastal property to a newly designated "commercial resort" classification. Following an unsuccessful appeal to the Hancock County Circuit Court, a group of Hancock County citizens appeal. We find that the Board failed to adequately describe its finding that conditions in the area changed to a degree sufficient to justify rezoning of the property at issue. As such, we reverse the Board's decision and render judgment for the Appellants.

FACTS AND PROCEDURAL HISTORY
¶ 2. In 1997, the Hancock County Board of Supervisors adopted zoning ordinances and a comprehensive zoning map. In 2005, on their own initiative, the Board of Supervisors sought to rezone a significant portion of waterfront coastal property. The record never precisely describes the area of the property at issue. Instead, the record commonly refers to the property as "approximately one thousand acres."
*864 ¶ 3. Regarding changes in its comprehensive zoning plan, Hancock County operates according to a two-tiered process. First, a Planning Commission reviews issues concerning zoning classifications and re-zoning and then submits its recommendations to the Board of Supervisors. Afterwards, the Board of Supervisors then accepts or rejects the Planning Commission's recommendations.
¶ 4. On April 14, 2005, the Planning Commission met and proposed to create a zoning classification that was, at that point, not provided for among Hancock County's zoning classifications. Designated as "C-4," this new zoning classification would allow for condominiums, apartments, hotels, motels, or "tourist accommodation facilities" of potentially unlimited height. Ultimately, the Planning Commission unanimously agreed to recommend adoption of the C-4 classification.
¶ 5. At the same meeting, the Planning Commission then considered whether to rezone the property at issue to the newly recommended C-4 designation. After a unanimous vote, the Planning Commission adopted the following resolution:
WHEREAS, this Commission has proposed a certain amendment to the Hancock County Zoning Map and has conducted a public hearing on said map amendment as required by the Zoning Ordinance and by the laws of the State of Mississippi; and
WHEREAS, this Commission finds as follows with respect to the said map amendment:
1. Conditions have changed in and around the area sought to be rezoned which make an amendment to the Zoning Map necessary and desirable and in the public interest.
2. The proposed map amendment is consistent with the goals and objectives of the Comprehensive Plan of Hancock County, Mississippi.
3. Existing uses of the property are within the general area of the property in question do not conflict with and are compatible with and consistent with commercial resort uses.
4. The property in question is currently zoned C-2 (Highway Commercial) in part, R-2 (Medium Density Residential) in part and A-1 (General Agricultural) in part, but is now being planned for commercial resort uses to compliment and support the new Bayou Caddy Casino which is scheduled to begin operation later this year.
5. The property in question is not suited for commercial, residential and agricultural uses but rather is more ideally suited for the kinds of uses allowed in a C-4 Commercial Resort District.
6. That the trend of development in the general area of the property in question calls for more commercial resort uses to support the commercial and recreational uses which will develop in conjunction with the Bayou Caddy Casino and the new sand beach adjacent thereto.
NOW THEREFORE, BE IT RESOLVED that this Commission recommend to the Board of Supervisors of Hancock County, Mississippi, that the zoning classification of the following described property be changed from C-2 (Highway Commercial), R-2 (Medium Density Residential) and A-1 (General Agricultural) to C-4 (Commercial Resort):
That certain property bounded by the Mississippi Sound on the East and Southeast; the centerline of Poinset Avenue on the East and Northeast and extending in a Northwesterly direction to the Southern line of the railroad right of way, the railroad right of way on the *865 Northwest and the centerlines of Turkey Bayou and Bayou Caddy on the West and South.[1]
¶ 6. The Board of Supervisors next met on May 2, 2005. At that meeting, the Board of Supervisors adopted the Planning Commission's recommendations. In so doing, the Board of Supervisors "incorporate[d] by reference the entire record from the Hancock County Planning/Zoning Commission, all findings and public hearings held by the Commission, and all documents reviewed and relied upon by the [Commission]."
¶ 7. A group of Hancock County residents opposed the re-zoning. Earl Childs, Lori Gordon, Amelia Killeen, David Wheeler, and Maria Beard all owned property adjacent to the rezoned and newly classified area.[2] On May 18, 2005, the Appellants filed a bill of exceptions and, in effect, appealed the Board of Supervisors' decision to the Hancock County Circuit Court.
¶ 8. On May 31, 2005, Paradise Properties Group, LLC, filed a motion to intervene. At the same time, Paradise Properties filed an answer to the Appellants' bill of exceptions. Paradise Properties submitted that the Board of Supervisors' decision was not arbitrary or capricious and, as such, the circuit court should dismiss the Appellants' bill of exceptions. On the exact same day, Kudo Developers of Mississippi, LLC, filed a separate motion to intervene. Like Paradise Properties, Kudo Developers asserted that the circuit court should dismiss the Appellants' bill of exceptions.
¶ 9. The parties submitted briefs and the matter went before the circuit court for review. On January 31, 2006, the circuit court conducted a hearing on the Appellants' bill of exceptions. However, on March 13, 2006, the circuit court entered an opinion and found that the Appellants "failed to persuade this Court that the order was arbitrary or capricious, i.e., lacking in substantial evidence, discriminatory, illegal, or not supported by substantial evidence." As such, the circuit court affirmed the decision of the Board of Supervisors.

STANDARD OF REVIEW
¶ 10. We will set aside the zoning decisions of a board of supervisors only if the decisions are arbitrary, capricious, discriminatory, illegal or if they are unsupported by substantial evidence. Kuluz v. City of D'Iberville, 890 So.2d 938, 940(¶ 2) (Miss.Ct.App.2004). Not only that, we are to leave zoning decisions undisturbed where the decision is "fairly debatable." New Albany v. Ray, 417 So.2d 550, 552-53 (Miss.1982).

ANALYSIS

I. WHETHER THE CIRCUIT COURT ERRED WHEN IT UPHELD THE BOARD OF SUPERVISORS' DECISION TO REZONE THE PROPERTY AT ISSUE
¶ 11. The Appellants claim the circuit court erred when it affirmed the *866 Board of Supervisors' decision to rezone the property at issue. There is a strong presumption that comprehensive zoning ordinances adopted or amended by local governing authorities are well-planned and intended to be permanent. Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1224(¶ 11) (Miss.2000). In fact, zoning ordinances are presumed reasonable and for the public good. Id. at 1227(¶ 23). However, in the context of rezoning, this presumption does not carry the same weight. Id.
¶ 12. It is important to note that this is a question of rezoning rather than zoning. For a rezoning application to be approved, the applicant must prove by clear and convincing evidence that either (1) there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that a public need exists for such rezoning. Tippitt v. City of Hernando, 909 So.2d 1190, 1192(¶ 5) (Miss. Ct.App.2005). Even where a zoning change has been taken up without the filing of a petition or application, the clear and convincing evidence burden of proof is still required. Town of Florence, 759 So.2d at 1224(¶ 12).
¶ 13. There is no allegation that there was a mistake in the original zoning. As such, the Board of Supervisors has consistently traveled on the concept that the character of the rezoned property changed to such an extent to justify rezoning and that there was a public need to rezone the thousand acre property. The Appellants claim the Board of Supervisors failed to present clear and convincing evidence of a change in the character of the property. After careful and meticulous review of the record as well as oral argument, we agree.
¶ 14. The Board of Supervisors did not enter any findings or conclusions into the minutes when it accepted the Planning Commission's recommendation to rezone the property at issue. Instead, it "incorporated by reference" all findings and conclusions of the Planning Commission. The Planning Commission's findings on the matter are sparse and conclusory at best, and non-existent at worst. To be precise, the only mention of any change in conditions among the minutes of the Planning Commission's decision was the statement that, "Conditions have changed in and around the area sought to be rezoned which make an amendment to the Zoning Map necessary and desirable and in the public interest." While the Planning Commission obviously found that conditions in the area had changed, the Planning Commission neglected to detail just what conditions had changed. Similarly, the Planning Commission failed to mention how those unnamed conditions had changed.
¶ 15. The Board of Supervisors and the intervening developers vigorously argue that the record sufficiently details a change in the character of the property. To advance their argument, they point to the April of 2005 Planning Commission meeting. According to the Board of Supervisors, the Board noted that substantial evidence indicated the presence of increasing blight and criminal activity. The Board of Supervisors also submits that the character of the property has changed due to increasing development pressures. Finally, the Board of Supervisors claims it and the Planning Commission used their own knowledge and familiarity with Southwestern Hancock County when they determined that the character of the property had changed.
¶ 16. Before we address these individual arguments, it is noteworthy that neither the Planning Commission nor the Board of Supervisors ever specified any of the above justifications for a change in condition for rezoning. Instead, the Planning *867 Commission simply found a change in condition with no elaboration as to what that condition was or how it had changed. The Board of Supervisors did not enter any findings of its own. Instead, it simply adopted the Planning Commission's findings. With that in mind, we address the Board of Supervisors' individual assertions.

A. Blight and/or Increased Crime
¶ 17. True enough, deterioration of a neighborhood or increased crime are evidence of a character change in a neighborhood that justifies rezoning. Briarwood, Inc. v. City of Clarksdale, 766 So.2d 73, 81(¶ 34) (Miss.Ct.App.2000). Oral statements regarding increased criminal activity in the surrounding neighborhood may amount to substantial evidence of a change in the character of a neighborhood that justifies a decision to change a zoning classification. Id. Be that as it may, neither the Planning Commission nor the Board of Supervisors ever expressly determined that the thousand acre property had suffered increased crime or increased blight since it was originally zoned in 1997.
¶ 18. In Briarwood, the City of Clarksdale found that health and safety concerns were one of many ways that the character of certain property had changed to justify re-zoning. Id. at (¶ 18). This Court found that the City of Clarksdale did not act arbitrarily or capriciously when it concluded as it did. Id. at (¶ 27). However, unlike the case presently before us, the City of Clarksdale "received testimony from area residents and City officials, including the Police Chief and Juvenile Officer." Id. at (¶ 18). Here, there is no testimony from any government official. The record contains no information that would permit a review of the presence of crime in the area when it was originally zoned as compared to the presence of crime when it was rezoned. "Without comparable evidence, there can be no showing of a material change in the neighborhood." Cockrell v. Panola County Bd. of Supervisors, 950 So.2d 1086, 1094(¶ 17) (Miss.Ct.App.2007). Likewise, we have no comparable evidence to determine the condition of the property when it was originally zoned in 1997 as compared to 2005. As such, it is impossible to determine whether the property has suffered blight since it was first zoned in 1997.
¶ 19. The Board of Supervisors submits that evidence of increased crime and blight was evident from materials presented by citizens at the Planning Commission meeting. Jim Maness submitted a thirteen page document titled "Quality of Life. . .?" Included in Maness's document is a photocopied picture of an unclear number of camper trailers with a statement underneath that reads, "We all know where Poor John's is located, especially the Hancock County Sheriff's Department for numerous call [sic] on domestic violence, public drunkenness and severe drug trafficking. Investors have recently bought this to eliminate the obvious problem and plan on developing this property into a clean and beautiful, but more importantly a taxable property." Maness's document also contains a page with photocopied pictures of what appears to be of a burned mobile home and a burned standard construction home. A statement appears between the pictures. It reads, "Common `House' fire or Crystalmeth-lab tragedy??"
¶ 20. Additionally, Maness's submission also contains four pages with a total of nine photocopied pictures. It is unclear whether the pictures represent property in the area sought to be rezoned. In any event, the pages contain statements like "A continuation of blight residence and abandonment" and "Every city is proud to *868 have among them a person whose profession consists of collecting junk."
¶ 21. It is clear that Maness did a thorough job of preparing a document intended to demonstrate the conditions of the property at issue. However, Maness's document does not demonstrate the condition of the property when it was originally zoned in 1997. It does not demonstrate how the property has changed since that time. Maness's document does not indicate the criminal activity as of 1997. While Maness speculates about the presence of criminal activity, it is only speculation.
¶ 22. Moreover, Maness is a concerned citizen. It is the Board of Supervisors' place to ensure that the minutes accurately reflect a change in conditions of the property sought to be rezoned. The Board of Supervisors may not make a conclusory finding and then defer to the citizenry by throwing page after page of citizen generated material upon its finding. Instead, the Board of Supervisors must make its own specific findings and properly supported conclusions.

B. Increasing Development Pressures
¶ 23. Increasing development pressures may constitute substantial change in the character of a neighborhood that justifies modification of a zoning classification. Briarwood Inc., 766 So.2d at 81(¶ 33). In Briarwood, a municipality received substantial evidence that increasing development of multifamily subsidized housing units was over-taxing the public infrastructure in the area. This increasing development was substantial evidence of a changed condition supporting reclassification of the area from multi-family residential to single and two family residential.
¶ 24. Here, there is no evidence of increasing development that over-taxed public infrastructure. Instead, the evidence indicates a lack of development or prospective development. The presence of previously unavailable development options, without more, is not sufficient to demonstrate a change in character of property that would support rezoning. There is absolutely no evidence that the infrastructure was over burdened.

C. Personal Knowledge
¶ 25. The Board of Supervisors submits that the members of the Planning Commission and the Board of Supervisors properly considered their own common knowledge and familiarity with the property in question when they found a change in the character of the property. The Board of Supervisors points out that in determining the factual issues in rezoning, the Board of Supervisors could consider not only the information obtained at the factual hearing, but also their own common knowledge and the familiarity with the ordinance area. Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991).
¶ 26. If the Planning Commission or the Board of Supervisors used their common knowledge and familiarity with the property in question, that common knowledge and familiarity is not borne out by the record. What is more, that common knowledge or familiarity is not related to any particular finding. Was that common knowledge related to any particular justification for rezoning? If so, it is not mentioned even once in the record before us. "Absent a record showing sufficient evidence to support the findings, it is inevitable that reversal will follow." Id. at 945. "On the other hand, while recognizing the desirability of specific findings by the zoning authority on each considered issue, we will not reverse for a lack of such specificity where a factual basis for the action is disclosed." Id. Here, there is no disclosed factual basis for the action.
*869 ¶ 27. As stated in Board of Aldermen v. Conerly, 509 So.2d 877, 885 (Miss. 1987) (citation omitted):
informality attends rezoning proceedings, and governing board members may take into consideration their personal knowledge and familiarity with their community (as indeed it would be well nigh impossible in reality to ignore) . . . [but] this by no means suggests that, in order to justify rezoning, a board need not find the necessary criteria for rezoning by clear and convincing evidence and that it is not necessary that such evidence appear in the record.
¶ 28. "The classification of property for zoning purposes is a legislative rather than a judicial matter." Fondren N. Renaissance v. Mayor of Jackson, 749 So.2d 974, 977(¶ 7) (Miss.1999). "The order of a governing body may not be set aside unless it is shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." Id. "In other words, the judicial department of the government of this state has no authority to interdict either zoning or rezoning decisions which may be said `fairly debatable.'" Id. Here, there is absolutely no evidence of any change in character of the property. It follows that there is no "fairly debatable" evidence of a change in character. "If a decision could be considered fairly debatable then it could not be considered arbitrary or capricious." Id. Because it is not fairly debatable, we find the decision of the Board of Supervisors was arbitrary and capricious. An act is arbitrary if it is done not according to reason or judgment, but solely upon the will alone. Gillis v. City of McComb, 860 So.2d 833, 836(¶ 8) (Miss.Ct.App.2003). An act is capricious if it is "done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." Id. Neither the Planning Commission nor the Board of Supervisors supported its decision with any reasoned conclusion. Instead, they only advanced conclusions.
¶ 29. As Justice Hawkins eloquently stated:
Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.
Zoning ordinances curb the exodus of city workers to a lot in the distant countryside. Indeed, the protection of zoning ordinances in municipalities, as opposed to no zoning in most county areas, encourage the choice of a city lot rather than a country lot for a home in the first instance. Zoning ordinances make city property more attractive to the prudent investor.
In the absence of agreement between all interested parties, an amendment to a zoning ordinance is not meant to be easy. Otherwise, it would be a meaningless scrap of paper.
It is for precisely this reason that, while this Court accords profound deference to actions of governing boards pertaining to their local affairs, we have nevertheless carefully delineated rules for them to follow before amending their duly adopted and established zoning ordinances. The amendment of a zoning ordinance will never be simply a matter of local politics as long as this Court sits.
Conerly, 509 So.2d at 885-886. (quoting Mayor and Comm'rs v. Wheatley Place, 468 So.2d 81, 82 (Miss.1985)).
¶ 30. The Board of Supervisors has failed to meet its burden of proof. Since *870 the Board of Supervisors has failed to prove by clear and convincing evidence that there has been a substantial change in the character of the thousand acre property at issue, we must reverse the decision of the Board of Supervisors. Wright v. Mayor & Comm'rs of Jackson, 421 So.2d 1219, 1223 (Miss.1982). Accordingly, as the Mississippi Supreme Court did in Wright and this Court recently did in Cockrell, we reverse and render judgment for the Appellants.
¶ 31. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., MYERS, P.J., IRVING, CHANDLER AND BARNES, JJ., CONCUR. CARLTON, J., DISSENT WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, P.J., GRIFFIS AND ISHEE, JJ.
CARLTON, J., Dissenting:
¶ 32. I disagree with the majority's finding that the Board's decision was arbitrary and capricious. In light of our limited review of zoning matters, I find that the Board's decision to re-zone is supported by substantial evidence and would affirm the decision of the Hancock County Circuit Court upholding the Board's decision to re-zone the subject property. Accordingly, I respectfully dissent.
¶ 33. Mississippi law recognizes that matters of zoning and re-zoning are legislative functions which the courts of our State are without authority to disturb where the decision is "fairly debatable." Briarwood, Inc. v. City of Clarksdale, 766 So.2d 73, 80 (¶¶ 30-31) (Miss.2000) (citations omitted). I find that the Planning Commission's findings and the Board's decision are fairly debatable and supported by credible evidence showing changed conditions sufficient to warrant the zoning change of the property in question.
¶ 34. The changes noted by the Board were expressed at the April 5, 2005, planning meeting and indicated the presence of increasing blight and a change of character due to increased development pressures. As to increased blight, the "Quality of Life" document depicted the deteriorated condition of the subject property and represented a regression in the area since the zoning ordinance was initially adopted. Also, before the Board was a document presented entitled "Visions for Improvement in Clement Harbor" which identified a problem with the infrastructure of the area. Specifically, the document stated that "two car cars can't pass each other on most streets." The majority takes issue with the fact that the document lacks comparable evidence demonstrating the condition of the property at the time of the original zoning. However, I find that the Board's personal knowledge and familiarity of the area in question provides a basis to compare the present condition of the property with the condition existing at the time of the initial zoning. See generally Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991) ("In determining the factual issues in rezoning, the Board could consider not only the information obtained at the hearing but also their own common knowledge and the familiarity with the ordinance area."). Therefore, I find a sufficient basis from which the Board concluded that the area had suffered increased blight since the original zoning.
¶ 35. Regarding a change in the character due to increased development pressures, the Planning Commission's findings, as adopted by the Board, specifically found that "the trend of development in the general area of the property in question calls for more Commercial Resort uses to support the commercial and recreational uses, which will develop in conjunction with the *871 Bayou Caddy Casino and new sand beach adjacent thereto." As acknowledged by the majority, increasing development pressures may provide a basis to show a change in the character of a neighborhood sufficient to warrant a change in zoning. Briarwood, 766 So.2d at 81(¶ 33). The majority concludes that the evidence of increasing development pressure in the instant case is insufficient. However, I find to the contrary. It is clear from the record that the Board was well aware of the new Bayou Caddy Casino resort development and of the increased interest in development of the subject area collateral thereto. Accordingly, I find sufficient evidence to support the Board's finding of a change in the character of the subject property due to increased development pressures.
¶ 36. I find substantial evidence supported the Board's decision.[3] Their decision was reached through a thoughtful process involving public hearings, and recommendations of the Planning Commission. The Board's determination was not made in a whimsical manner or without reason; rather, it was made in accordance with procedures established to ensure the measured consideration of such matters. In light of the foregoing, I find that the Board's decision to re-zone the subject property was at worst fairly debatable and not arbitrary or capricious. I would affirm the Circuit Court and uphold the decision of the Board.
LEE, P.J., GRIFFIS AND ISHEE, JJ., JOIN THIS OPINION.
NOTES
[1] On August 28, 2005, Hurricane Katrina made landfall. We take judicial notice that Hancock County was devastated by the effects of Hurricane Katrina. However, the effects of Hurricane Katrina are not alleged to be the basis for any change in the condition of the property, as the Planning Commission and the Board of Supervisors, on their own motion, began the rezoning process as of at least April of 2005.
[2] In general, we refrain from referring to parties as Appellants. However, due to the tedious nature involved with referring to the group by individual name, we make an exception in this case and refer to the Childs group as "the Appellants."
[3] I find substantial evidence to support the board's decision with respect to the matters presented to the Board and the Planning Commission. I further take judicial notice that since this dispute had arisen, the devastation of Hurricane Katrina hit our Gulf Coast. However, evidence of the impact of this national natural disaster was not presented by either party and therefore does not provide the basis for my position in this case.