MYERS, P.J.,
Dissenting:
¶ 16. The majority concludes that the Circuit Court erred in affirming the City of Gautier’s decision to rezone the subject property. The City found a substantial change in the neighborhood and a public need for rezoning the subject property to multifamily residential. The majority finds that the changes cited by the City were “in accordance with the original zoning plan” and therefore not legitimate factors for its consideration. I dissent because I find the majority’s conclusions unsupported by the record and the City’s decision beyond our authority to disturb on appeal.
¶ 17. In Childs v. Hancock County Board of Supervisors, 1 So.3d 855, 861 (¶ 19) (Miss.2009), the supreme court succinctly laid out our standard of review for such decisions:
Judicial review is limited to determining whether there was a substantial eviden-tiary basis for the Board’s decision. It is not the role of the judiciary to reweigh the evidence, but rather to verify if substantial evidence exists. Neither the circuit court nor the Supreme Court has the power to tamper with municipal zoning unless the zoning decision is shown to be arbitrary, capricious, discriminatory, illegal, or without substantial evidentiary basis.
(Citation and internal quotations omitted.) Moreover, the supreme court reaffirmed its prior holdings that the actions of the local authority are presumptively valid. “The action of the [local authority] in enacting or amending an ordinance, or its action of rezoning, carries a presumption of validity, casting the burden of proof upon the individual or other entity assert *685 ing its invalidity.” Id. at 859 (¶ 12) (quoting Faircloth v. Lyles, 592 So.2d 941, 943 (Miss.1991)). “The classification of property for zoning purposes is a legislative rather than a judicial matter. The order of a governing body may not be set aside unless it is shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis.” Id. at 860-61 (¶ 18) (quoting Fondren N. Renaissance v. Mayor of Jackson, 749 So.2d 974, 977 (¶ 7) (Miss.1999)) (emphasis added).
¶ 18. A comprehensive zoning plan is defined by Mississippi Code Annotated section 17-l-l(c) (Supp.2009), which states:
“Comprehensive plan” means a statement of public policy for the physical development of the entire municipality or county adopted by resolution of the governing body, consisting of the following elements at a minimum:
(i) Goals and objectives for the long-range (twenty (20) to twenty-five (25) years) development of the county or municipality. Required goals and objectives shall address, at a minimum, residential, commercial and industrial development; parks, open space and recreation; street or road improvements; [and] public schools and community facilities.
(ii) A land use plan which designates in map or policy form the proposed general distribution and extent of the uses of land for residences, commerce, industry, recreation and open space, public/quasi-public facilities and lands. Background information shall be provided concerning the specific meaning of land use categories depicted in the plan in terms of the following: residential densities; intensity of commercial uses; industrial and public/quasi-public uses; and any other information needed to adequately define the meaning of such land use codes. Projections of population and economic growth for the area encompassed by the plan may be the basis for quantitative recommendations for each land use category.
(iii) A transportation plan depicting in map form the proposed functional classifications for all existing and proposed streets, roads and highways for the area encompassed by the land use plan and for the same time period as that covered by the land use plan. Functional classifications shall consist of arterial, collector and local streets, roads and highways, and these classifications shall be defined on the plan as to minimum right-of-way and surface width requirements; these requirements shall be based upon traffic projections. All other forms of transportation pertinent to the local jurisdiction shall be addressed as appropriate. The transportation plan shall be a basis for a capital improvements program.
(iv) A community facilities plan as a basis for a capital improvements program including, but not limited to, the following: housing; schools; parks and recreation; public buildings and facilities; and utilities and drainage.
¶ 19. The Collinses have argued that the changes cited by the City were “in accordance with the original zoning plan,” but they have failed to substantiate this allegation with evidence in the record — it contains no zoning plan for this court to review. In fact, the Collinses’ principal argument on appeal is that the City does not even have a comprehensive plan.[3] *686 Neither of these arguments were raised before the city council or the planning commission; they have been made for the first time on appeal.
¶ 20. The only evidence in the record concerning the contents of the City’s comprehensive plan was offered by the developer: it includes what purports to be a zoning map showing the subject property and its immediate surrounding area, to a radius of approximately one mile,[4] and generalized descriptions of the land use categories assigned to nearby parcels — i.e., R-l is “single-family residential,” R-2 is “multi-family residential,” and C-2 is “commercial.” No complete definitions have been offered. In fact, there is no record regarding the contents of the plan sufficient to satisfy any of the four requirements for a comprehensive plan enumerated in section 17-1-1 (c) — no twenty or twenty-five year development plan, no comprehensive land-use map with specific zoning definitions, no transportation plan, and no community facilities plan.
¶ 21. Because of the state of the record, I cannot dismiss the changes in the neighborhood cited by the City as developments in accordance with its comprehensive plan. To do so without examining the City’s zoning ordinances would violate this Court’s standard of review on appeal; zoning amendments are presumptively valid and the burden of proving them invalid falls upon party asserting their invalidity. Childs, 1 So.3d at 859 (¶ 12). The majority turns this presumption on its head, finding for the Collinses because “the City has not refuted this claim.”
¶ 22. In reviewing the record, there is good reason to believe that many of the changes cited by the City were not, in fact, in accordance with the original zoning plan — even if some of those uses were permitted by the present zoning. At the time of the original zoning, the “Santa Maria Park” to the north of the subject property along Martin Bluff Road was either a water park or an RV park; at the time of rezoning, it was alternatively called either a “trailer park” or a “FEMA park.” Nor has it been shown that the increased density of multi-family housing in the R-2 and C-2 zones to the south was in accordance with the original plan. Moreover, nothing in the record indicates that the planned expansion of Martin Bluff Road to four lanes was contemplated in the original zoning. It is likewise unclear from the record where the Farragut Lake Apartments are located or what the zoning classification was at the time of the original zoning ordinance.[5] And, although the majority is technically correct in stating that the rezoning renders the subject property an “island” of R-2, surrounded by R-l, it is a relatively large island at 13.5 acres. It would not be the only such island along Martin Bluff Road — both the C-2 zone to the north and the R-2/C-2 zone to the south are of comparable size, are entirely surrounded by R-l, and contain dense multi-family housing.
*687 ¶ 23. On this record, I cannot say that any of the neighborhood changes cited by the City were immaterial. The Collinses have not met their burden to show that the changes were in accordance with the City’s comprehensive plan. I would instead find that the City’s rezoning decision is supported by substantial evidence, and, therefore, is a legislative decision beyond this Court’s authority to disturb on appeal. I respectfully dissent.
KING, C.J., AND LEE, P.J., JOIN THIS OPINION.

. It appears undisputed from the record that the City has zoning ordinances, but they have not been made a part of the record for this Court to evaluate.

. A larger zoning map purporting to show the entire municipality was made part of the record in documents submitted by the developer, but it is undated and reproduced in the record as a reduced size, black-and-white photocopy of what was apparently a color-coded original.

. The record only states that this new development was located north of Interstate 10 and east of Martin Bluff Road; the precise location is not given. As the majority notes, there is a letter from the developer in the record which states that the land "along” Martin Bluff Road north of the interstate highway is continuously zoned C-2; however the distance of the development from Martin Bluff Road is not stated. The majority’s assumption that this development was "along” Martin Bluff Road and therefore on land zoned C-2 is in my judgment unfounded.