RUSSELL, J., for the Court:
¶ 1. Jack and Diane Donovan appeal the Long Beach Board of Aldermen’s (Board) decision to rezone portions of property owned by Ira Woodfield from residential to commercial. They assert three issues on appeal: (1) whether the Board erred in rezoning Woodfield’s property under Mississippi Code Annotated section 17-1-17 (Rev.2012) without a supermajority vote; (2) whether there was clear and convincing evidence of a substantial change in the character of the neighborhood and a public need for the rezoning, and whether the Board improperly considered hardship as a factor in its decision; and (3) whether the Board’s decision to rezone Woodfield’s property constituted improper spot zoning. *167 Upon review, we find that a supermajority vote was required because the Donovans protested, and the Donovans’ land comprised more than twenty percent of the land adjacent to the rear of Woodfield’s property. Therefore, we reverse and render the Board’s decision to rezone the property. Because the first issue is dis-positive, we do not reach the other issues raised on appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. Woodfield entered into a contract to sell certain land owned by her to Kees-ler Federal Credit Union (Keesler). The contract was contingent upon rezoning the land from residential to commercial[1] for the purpose of allowing Keesler to build a new local branch on the property. Woodfield owned 13.4 acres, but sought to resubdivide the property and sell approximately 2.47 to 2.53 acres (subject property) to Keesler.
¶ 3. On January 15, 2009, Woodfield filed an application to resubdivide the property into three parcels. On January 22, 2009, the Long Beach Planning Commission (Commission) voted to approve the certificate of resubdivision. On January 30, 2009, Keesler and Woodfield requested that the Board disregard their resubdivision request because their intent was to create two parcels rather than three. On February 3, 2009, the Board noted in its minutes that the previous approval for the resubdivision was withdrawn and of no effect.
¶ 4. On February 4, 2009, Keesler and Woodfield submitted a second application seeking to resubdivide the property into two parcels. On February 12, 2009, the Commission voted to recommend approval of the resubdivision application, and it was approved by the Board on February 17, 2009.
¶ 5. Woodfield also filed a case-review application requesting that the subject property be rezoned from residential to commercial. On April 9, 2009, the Commission held a public hearing to consider Woodfield’s application to rezone the subject property. The Commission determined that there was no substantial change in the character of the neighborhood. Therefore, the Commission declined to recommend approval of the rezoning application to the Board by a vote of four to two.
¶ 6. On April 17, 2009, Woodfield and Keesler appealed the Commission’s decision, and a public hearing was held on June 3, 2009. The minutes reflect that Woodfield “declared a hardship, as she is an aging widow living on a limited income” and that Woodfield felt “it has become necessary to sell off a portion of her property in order to remain independent, pay her bills and taxes, and maintain a home.”
¶ 7. Also at the June 3, 2009 hearing, the Donovans, Johnny and Patricia Goodman, and other citizens filed a petition protesting Woodfield’s request to rezone the subject property, which contained several signatures with each person’s residential address. The Donovans owned two acres immediately adjacent to, and to the west of, the rear of Woodfield’s property. The Goodmans owned three acres immediately adjacent to, and west of, the Dono-vans’ property. The minutes reflect the protest as follows:
[T]he Donovans are protesting, under the auspices of [section] 17-1-17, on behalf of 20% or more of the property *168 owners immediately adjacent to the rear of the subject Woodfield property within 160 feet. Th[e] property owners include those that contain more than 20% of the property adjacent to the rear of the subject Woodfield property. [Counsel for the Donovans, Abner Oglesby,] contends the Donovans have met the requirements of [section] 17 — 1— 17, which requires a 3/5 [supermajority] vote of the Board ... to approve the proposed change.
[[Image here]]
Considerable discussion was held regarding the issue of a vote calling for a simple majority or a [supermajority].
[[Image here]]
Upon further discussion, Alderman Holder stated that the protesters had not presented any documentation regarding the actual interest owned by them by survey or otherwise, such as would allow the Board to accurately determine whether they owned in excess of 20% of the property within the adjoining 160 feet to the west of the subject property. [The protestors] [flailing in such burden, Alderman Holder made [a] motion seconded by Alderman Lishen to conduct the vote as a simple majority, as the proper or adequate documentation and calculations have not been provided to substantiate the need for a [superma-jority].
[[Image here]]
Alderman Holder restated his position that the protestors had not presented any documentation regarding the actual interest owned by them by survey, or otherwise provided sufficient proof as would allow the Board to accurately determine whether they owned in excess of 20% of the property within the adjoining 160 feet to the west of the subject property. Alderman Notter disagreed with the position of Alderman Holder, stating that he felt the 20% showing had been made[.]
(Emphasis added).
¶ 8. At the public hearing, several documents were introduced. Woodfield and Keesler submitted a survey performed by Menhennett surveying dated January 9, 2009, which laid out the dimensions of the Donovans’ property as follows: 150 feet for the run of the north margin; 580.15 feet for the run of the east margin; and 580.19 feet for the run of the west margin.
¶ 9. Woodfield and Keesler also submitted a site plan, which provided the dimensions of the proposed parcel on Woodfield’s property as 275 feet on the east property margin fronting Klondyke Road and approximately 390 feet running west on the north and south margins of the property toward the Donovans’ property, and then closing the rectangle of the property by a 275-foot west property margin adjacent to the Donovans’ property. To the west, the site plan indicates that the Donovans’ property begins at the northeast corner of Woodfield’s property and shows the dimensions of 150 feet for the run of the north margin of the Donovans’ property and 580.14 feet for the run of the east margin of the Donovans’ property. A letter dated February 12, 2009, from the City’s consulting engineer stated that the proposed parcel would have approximately 275 feet of frontage on Klondyke Road and would be about 390 feet deep. The Dono-vans introduced a map showing that their property directly abuts the subject property, and that the Donovans’ and Goodmans’ properties together stretch 364 feet from the rear of the subject property.
¶ 10. The Board determined that the character of the neighborhood had changed to such an extent as to justify rezoning. Specifically, the Board found:
*169 The [ajpplicant has shown factually that there has been a change in the character of the neighborhood by increased traffic, [Hurricane] Katrina growth to the north, Klondyke Road being a major transportation artery and new, expanding commercial uses along Klondyke Road and other changes [having been] presented by [the] applicant.
The City’s newly developed comprehensive plan shows Klondyke Road as a major commercial area[,] and the change will be in conformance with the new plan.
There is a need for new commercial properties north of the railroad tracks due to Hurricane Katrina. Insurance and safety is forcing development north[,] and this area is part of that growth.
Due to the existing commercial property located directly across the street from the proposed project, this rezoning would not constitute a situation of spot zoning.
Finally, the applicant has conformed to ... the Long Beach Zoning Ordinance[,] which outlines the requirements for a zoning change.
Therefore, by a four to three margin, the Board voted to grant the requested zoning change.
¶ 11. On June 12, 2009, the Donovans appealed to the circuit court, arguing, among other things, that the zoning change required a supermajority vote because twenty percent or more of the land owned by protestors in the area immediately adjacent to the rear of Woodfield’s property had protested the rezoning. The circuit court heard oral argument on May 20, 2010. On November 2, 2010, the circuit court entered an order affirming the Board’s decision to rezone the property, which stated in part:
Appellants presented a petition at the public hearing containing a number of signatures, many of which were illegible, and what they claim is their residential address. Bearing in mind the standard set forth by the Mississippi Supreme Court, this [c]ourt does not find that Appellants met their burden as “the protesting landowners to affirmatively show that they were within the statutory class who could validly object.”
On December 1, 2010, the Donovans appealed.
DISCUSSION
¶ 12. “In reviewing an administrative agency’s findings of fact, our courts are limited by the arbitrary and capricious standard of review.” Citizens Ass’n for Responsible Dev., Inc. v. Conrad, 859 So.2d 361, 365 (¶ 7) (Miss.2003). An agency action is arbitrary or capricious if it “entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” Id.
¶ 13. The Donovans argue that a supermajority vote was required because they own twenty percent or more of the area immediately adjacent to the rear of Woodfield’s property and protested Wood-field’s application to rezone the property. The relevant statute states:
In case of a protest against such change signed by the owners of twenty percent (20%) or more, either of the area of the lots included in such proposed change, or of those immediately adjacent to the rear thereof, extending one hundred sixty (160) feet therefrom or of those directly opposite thereto, extending one hundred sixty (160) feet from the street frontage of such opposite *170 lots, such amendment shall not become effective except by the favorable vote of three-fifths (3/5) of the members of the legislative body of such municipality or county who are not required by law or ethical considerations to recuse themselves.
Miss.Code Ann. § 17-1-17 (emphasis added). “The burden is upon the party invoking the [supermajority] vote requirement to affirmatively prove that the owners of 20% or more of the area specified in [section] 17-1-17 have protested the rezoning.” Fondren N. Renaissance v. Jackson, 749 So.2d 974, 981 (¶ 23) (Miss.1999). “Where that party fails to meet the burden, a majority vote by the Board will be sufficient to require rezoning of the property.” Id.
¶ 14. In this case, the question before us is whether twenty percent or more of those immediately adjacent to the rear of Woodfield’s property, extending one hundred sixty feet, protested the rezoning. In Fondren North Renaissance, 749 So.2d at 981 (¶ 22), our supreme court held that land outside the 160-foot area specified in section 17-1-17 is not considered toward the twenty percent threshold. An attorney general opinion provides further guidance in determining what land counts toward the twenty percent requirement:
[A] petition in protest of a rezoning must be signed by the owners of twenty percent of the total area of lots (in any one of those separate described areas) before [sjection 17-1-17 requires the governing authorities to approve the rezoning measure by a ... supermajority. ... [T]he twenty percent figure should be calculated on the basis of the percentage of land owned by the protestors, whatever their number, within the area entitled to be included for purposes of the statute compared to the total amount of land included in that area.
Miss. Att’y Gen. Op., 2001-0067, 2001 WL 283647, Clark (Feb. 9, 2001) (emphasis added).
¶ 15. In this case, it is clear from reviewing the Menhennett survey, the site plan, and other maps that the Donovans own at least twenty percent of the land immediately adjacent to the rear of Wood-field’s property. Nothing prohibits the Donovans from relying upon the maps, surveys, and site plans submitted by Woodfield and Keesler. In fact, the City’s Zoning Ordinance No. 344 states that the City “shall consider all information provided during the public hearing and examine all ... applications, reports, and recommendations transmitted to it prior to any official action.” (Emphasis added). Because the maps, surveys, and site plans clearly show that the Donovans own twenty percent or more of the area immediately adjacent to the rear of Woodfield’s property, a supermajority vote was required under Mississippi Code Annotated section 17-1-17. Since there was not a superma-jority vote approving Woodfield’s request to rezone the property, we are compelled to reverse and render.
¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND ISHEE, JJ., NOT PARTICIPATING.

. Specifically, the property would need to be rezoned from residential office/single family zoning (R-O/R-l) to commercial zoning (C — 2).